MAYOR OF REVERE *vs.* CIVIL SERVICE COMMISSION &
others[1]
(and a companion case[2]).

No. 90-P-1102.

Suffolk. May 9, 1991. - August 30, 1991.

Present: GILLERMAN, PORADA, & IRELAND, JJ.

*Practice, Civil*, Review respecting civil service, Action in nature of certio-
rari. *Civil Service*, Decision of Civil Service Commission, Police, Judi-
cial review. *Administrative Law*, Judicial review, Substantial evidence,
Findings.

On appeal by the Civil Service Commission and a police officer from a
decision by a Superior Court judge setting aside a decision of the com-
mission under G. L. c. 31, § 2 (*b*), thus leaving intact decisions of the
mayor of Revere and the personnel administrator of the Department of
Personnel Administration that the officer not be appointed police chief
of Revere, this court, inquiring whether there was substantial evidence
in the record before the commission to support its decision, remanded
the case for required findings of fact by a single commissioner, where
the commission's conclusion that the mayor acted in bad faith in decid-
ing not to make the appointment, and its rejection of the reasons of-
fered by the mayor for his action, had not been explained by clear rea-
soning from adequate subsidiary findings of fact. [320-327]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on December 7, 1987, and January 18, 1990,
respectively.

The cases were heard by *Elizabeth Bowen Donovan*, J.

*Paul G. Holian* for Edward F. Ryan.

[1]The Personnel Administrator of the Department of Personnel
Administration for the Commonwealth and Edward F. Ryan.

[2]Edward F. Ryan *vs.* Personnel Administrator of the Department of
Personnel Administration, Mayor of Revere, Civil Service Commission,
James V. Russo, John A. Deleire, and Edward Sasso. The cases were
consolidated by order dated February 16, 1990.

*David Hofstetter,* Assistant Attorney General, for Civil Service Commission.

*Ira H. Zaleznik* for the plaintiff.

GILLERMAN, J. After the personnel administrator of the Department of Personnel Administration for the Commonwealth (the administrator) had approved the decision of the mayor of the city of Revere (the mayor) not to appoint the defendant, Lt. Edward F. Ryan (Ryan), chief of the Revere police department, Ryan appealed from the decision to the Civil Service Commission (the commission) under the provisions of G. L. c. 31, § 2(*b*),[3] as amended by St. 1981, c. 767, § 11. The commission reversed the administrator's decision. The mayor responded with an action in the Superior Court in the nature of certiorari, see G. L. c. 249, § 4, and a judge of the Superior Court reversed the decision of the commission, leaving the decisions of the mayor and the administrator intact. Ryan and the commission have appealed to this court, claiming that the judge was in error and that the decision of the commission should be reinstated.[4] We vacate the judgment and remand the case to the Superior Court for remand to the commission.

---

[3]General Laws c. 31, § 2(*b*) provides, in pertinent part, as follows:

"In addition to its other powers and duties, the commission shall have the following powers and duties: . . .

"To hear and decide appeals by a person aggrieved by any decision, action, or failure to act by the administrator . . . .

"[Fourth paragraph] Hearings on any appeal before the commission may be held before less than a majority of its members, or the chairman may assign one or more members to hold such hearings and to report *his or their findings of fact* and recommendations to the commission for its action.

"[Fifth paragraph] *No decision of the administrator involving the application of standards established by law or rule to a fact situation shall be reversed by the commission except upon a finding that such decision was not based upon a preponderance of evidence in the record*" (emphasis added).

[4]In the companion case brought by Ryan, seeking a nunc pro tunc order of the Superior Court appointing him chief of police, the judge properly entered judgment for the defendants. See *Goldblatt* v. *Corporation Counsel of Boston,* 360 Mass. 660, 666 (1971). Ryan, in this court, makes no argument to the contrary, and we summarily affirm the judgment in that case.

1. *Background.* The factual background to this controversy is not in dispute. The case arose out of the theft and illegal use of police civil service examinations by members of the Revere police force.

In 1979, the administrator, having given an examination for the civil service position of police chief of Revere, certified a list of three candidates to the mayor. The first-ranked candidate, whom the mayor appointed chief of police,[5] subsequently was indicted and convicted for his involvement in the so-called "exam scam." The second-ranked candidate was also indicted, and a third candidate, whose name was added to the eligible list when the first of the indictments was handed down and whom the mayor appointed to fill the resulting vacancy in the chief's position, died unexpectedly. This left the third-ranking Ryan the sole remaining candidate on the certified list. See G. L. c. 31, § 27. The administrator, exercising special authority given him to revive the expired 1979 test, certified a "short list" to the mayor consisting of a single candidate, Ryan. See St. 1976, c. 534, § 1.

On February 8, 1989, the mayor wrote the administrator that he did not intend to appoint Ryan as chief of police, and, acting under the provisions of G. L. c. 31, § 27,[6] which permits a provisional appointment if less than three names are on the eligibility list, the mayor requested permission to make a provisional appointment[7] to the vacant position,

---

[5]General Laws c. 31, § 27, quoted in note 6, *infra*, permits the appointing authority to appoint any one of the three names on the eligibility list.

[6]General Laws c. 31, § 27, as amended by St. 1985, c. 527, § 16, provides, in pertinent part, that, "[e]xcept as provided otherwise by section fifteen, if the administrator certifies from an eligible list the names of three persons who are qualified for and willing to accept appointment, the appointing authority, pursuant to the civil service law and rules, may appoint only from among such persons. *If such eligible list contains the names of fewer than three such persons, the appointing authority may . . . request authorization to make a provisional appointment pursuant to sections twelve, thirteen and fourteen*" (emphasis added).

[7]The commission's brief argues that this case involves a provisional promotion under G. L. c. 31, § 15, not a provisional appointment under G. L. c. 31, § 12, but at the argument the commission acknowledged that

pending a new examination and certification. General Laws c. 31, § 12, which we set out in the margin,[8] requires that a provisional appointment of a person not on the eligibility list may be made but only if the appointing authority states "sound and sufficient reasons," satisfactory to the administrator, for not appointing a person who is on the eligibility list. The mayor identified three reasons for his decision not to appoint Ryan: (i) lack of leadership ability, (ii) excessive use of sick time and injury time, and (iii) lack of sensitivity, discretion, and good judgment.

On February 23, the administrator wrote the mayor that more specific information was required before the administrator could determine whether the mayor's reasons were "sound and sufficient" (see note 8, *supra*). The mayor provided the administrator with more specific information on March 6, including (i) Ryan's identification with a particular faction in the police department which resulted in "many in the department . . . hold[ing] him in contempt," (ii) itemization of Ryan's sick leave, which the mayor indicated was "substantial" in recent years and which "reflects the general perception that [he] lost interest in the job of a police officer and was 'marking time,' " and (iii) evidence of

---

whatever differences there are between the two sections do not bear on the issues in this case. We agree. See note 6, *supra*, and related text.

[8]General Laws c. 31, § 12, as inserted by St. 1978, c. 393, § 11, provides, in pertinent part, as follows:

"An appointing authority may make a provisional appointment to a position in the official service with the authorization of the administrator or, if the appointing authority is a department, board, commission, institution or other agency within an executive office, with the authorization of the secretary of such office. Such authorization may be given only if no suitable eligible list exists from which certification of names may be made for such appointment or if the list contains the names of less than three persons who are eligible for and willing to accept employment and the appointing authority submits a written statement to the administrator that each person whose name was certified and who reported for an interview was interviewed and considered for appointment and *states sound and sufficient reasons, satisfactory to the administrator*, for not making an appointment from among such persons. A provisional appointment may be authorized pending the establishment of an eligible list. Such authorization shall be void unless exercised within two weeks after it is granted. . ." (emphasis added).

Ryan's placing a wager while in uniform at the Wonderland race track. On March 16 the administrator, without elaboration, accepted reasons numbered two and three as sufficient to support the "non-selection" of Ryan. He then authorized the mayor to make a provisional appointment.

Proceeding under the provisions of G. L. c. 31, § 2(*b*), Ryan appealed to the commission, claiming in substance that the mayor's decision not to appoint him was politically motivated, arbitrary, capricious, and in violation of "basic merit principles." See G. L. c. 31, § 1.

In July, a single member of the commission held a hearing; the parties were represented by counsel who examined and cross-examined witnesses, including Ryan and the mayor. Notwithstanding the provisions of the fourth paragraph of G. L. c. 31, § 2(*b*), see note 3, *supra*, the single member made no report of his findings of fact and recommendations to the commission. The commission's decision was announced on December 4. "Based upon the testimony . . . and the materials offered in evidence [at the hearing before the single member], the [c]ommission conclude[d] that the reasons offered by the . . . [mayor were] insufficient and [were] a pretext for other reasons, viz., personal hostility on the part of the . . . [mayor] toward . . . [Ryan]."[9] Rec-

---

[9]The relevant portion of the commission's decision reads in full as follows:

"Based upon the testimony at the [c]ommission's hearing on this matter and the materials offered in evidence, the [c]ommission concludes that the reasons offered by the [a]ppointing [a]uthority are insufficient and are a pretext for other reasons, viz., personal hostility on the part of the [a]ppointing [a]uthority toward the [a]ppellant. While the discipline imposed as a result of the 1985 incident at the race track, and the underlying conduct involved, might, in a different time and place, be a sufficient reason for non-selection, it is clear from the testimony at the [c]ommission hearing, as well as from Exhibit #4 [the Hurley memorandum described *infra*], that the practice of wagering by officers working paid details at the track, offensive as it may be, was so all-pervasive throughout the ranks and so clearly tolerated by the then-Chief, that it may not properly be relied upon as a justification for the [a]ppointing [a]uthority's action. Similarly, the [a]ppellant's record of sick and injured time was not materially different from that of the individual selected for provisional appointment, so this reason also is insufficient. Finally, the reference to lack of leadership is nebulous and fails to reflect the fact that the [a]ppellant was carrying out

ognizing that the commission could not order the appointment of Ryan, see *Goldblatt* v. *Corporation Counsel of Boston*, 360 Mass. 660, 666 (1971), the commission merely ordered Ryan's name to the top of the forthcoming eligibility list for chief of police of Revere.

The judge of the Superior Court, who had the entire administrative record before her, concluded that (i) the commission exceeded its authority under the fifth paragraph of c. 31, § 2(*b*), which limits the scope of the commission's power to a review of whether the administrator's decision was based on "a preponderance of the evidence in the record," and (ii) in any event, "the Commission's decision was unsupported by substantial evidence." The judgment entered in the Superior Court, which we vacate, requires a discussion of the nature of the proceedings before the ·commission in appeals under the fifth paragraph of G. L. c. 31, § 2(*b*), see note 3, *supra*, a subject which has not, to our knowledge, previously been considered.by the Supreme Judicial Court or this court.[10]

2. *Discussion.* As previously noted, the mayor, before being given the authority to bypass the eligibility list, provided

---

his duties in a climate of punitive work assignments such that he could hardly have been expected to show what might conventionally be termed leadership qualities."

[10]The fifth paragraph of G. L. c. 31, §. 2(*b*) (see note 3, *supra*), is not without its interpretive difficulties. Taken literally, the fifth paragraph makes no sense. That paragraph provides that a decision of the administrator shall not be reversed, "except upon a finding that such decision was not based upon a preponderance of evidence in the record." The only "evidence in the record" is that developed before the commission, and thus the commission cannot inquire whether the decision of the administrator was "based upon a preponderance of evidence in the record" later developed before the commission. We must reject a construction which makes nonsense of a legislative enactment, *vanDresser* v. *Firlings*, 305 Mass. 51, 53 (1940) ("reason and common sense are not to be abandoned in the interpretive process"), choosing instead a construction which comports with the evident purpose of the Legislature as expressed in § 2(*b*), namely, that the commission must find, on the basis of the evidence before it, whether the appointing authority has sustained its burden of proving the validity of its decision by a preponderance of evidence in the record. If the appointing authority fails to sustain that burden, the commission may reverse the decision of the administrator.

the administrator with what the mayor claimed were "sound and sufficient reasons" for the nonselection of Ryan. The administrator accepted the proffered reasons.

Upon the ensuing appeal of Ryan, the commission was required to determine, after a hearing either before the commission or before less than a majority of its members, see G. L. c. 31, § 2(*b*), fourth par., "whether the . . . [mayor] had sustained . . . [his] burden of proving by a fair preponderance of the evidence that there . . . [were sound and sufficient reasons] for the action . . . [he] took." *Gloucester* v. *Civil Serv. Commn.*, 408 Mass. 292, 297 (1990).[11] The preponderance of the evidence test imposed by the fifth paragraph of G. L. c. 31, § 2(*b*), required the commission to determine whether, on the basis of the evidence before it, the mayor established that the reasons assigned by him for the nonselection of Ryan were, more probably than not, sound and sufficient. See *Fire Commr. of Boston* v. *Joseph*, 23 Mass. App. Ct. 76, 82 (1986). In the event of a failure of proof by the mayor, the commission has the power to reverse the decision of the administrator and, in this case, did so.

As noted, the mayor and the commission now come to court under the provisions of G. L. c. 249, § 4 (a civil action in the nature of certiorari). Certiorari is available to correct errors of law in administrative proceedings where, as here, judicial review is otherwise unavailable. "The nature or scope of the review accommodates to the kind of administrative decision involved, and this in turn is conditioned by the type of

---

[11]*Gloucester* involves G. L. c. 31, § 43 (appeals to the commission from action covered by § 41), but both § 43 and c. 31, § 2(*b*), fifth par., require that decisions of the commission be made on the basis of a preponderance of the evidence before the commission. The burden of proof which *Gloucester* assigns to the appointing authority under § 43 (where the burden is to prove "just cause") we assign to the appointing authority under § 2(*b*), fifth par. (where, on the facts of this case, the burden is to prove "sound and sufficient reasons").

We are not unmindful of the presumptive good faith and honesty that attaches to discretionary acts of public officials, see *Foster from Gloucester, Inc.* v. *City Council of Gloucester*, 10 Mass. App. Ct. 284, 294 (1980), but that presumption must yield to the statutory command that the mayor produce "sound and sufficient reasons" to justify his action.

substantive rule or standard that is being applied." *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph*, 19 Mass. App. Ct. 296, 300 (1985). Where there is a broad grant of discretionary authority to the agency, as is commonly true of local licensing authorities for example, see, e.g., G. L. c. 140, § 177A, the standard of review is error of law or abuse of discretion, measured by the arbitrary and capricious test. See *Caswell* v. *Licensing Commn. for Brockton*, 387 Mass. 864, 877-878 (1983). But where, as here, the authority of the administrative agency (here, the commission) is limited by "narrow and objective criteria,"[12] *id.* at 878, judicial review becomes "an assessment of the strength of the evidence supporting the agency's action . . . ." *Yerardi's, supra* at 300.

Thus we must inquire whether there is substantial evidence in the record before the commission to support the commission's decision, see *Gloucester* v. *Civil Serv. Commn.*, 408 Mass. at 297 — quite aside from the traditional judicial inquiry as to whether it appears from the record that the administrative decision involved a substantial error of law that affects material rights.[13] "[S]ubstantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981), quoting from *Boston Edison Co.* v. *Selectmen of Concord*, 355 Mass. 79, 92 (1968). The test is whether experience would permit "the reasoning mind" to make the agency decision. *Ibid.*

No doubt the commission's finding of bad faith — that is, the personal hostility of the mayor toward Ryan as the motivating factor — would be sufficient to reverse the decision of the administrator who, perhaps unwittingly,[14] accepted the

---

[12]General Laws c. 31, § 2(*b*), fifth par., authorizes the commission to reverse the decision of the administrator only in those cases where, on the basis of the record before the commission, the mayor's decision is not supported by a preponderance of the evidence.

[13]See *Debnam* v. *Belmont*, 388 Mass. 632, 635 (1983).

[14]There is no hearing before the administrator. The decision of the administrator is made exclusively on the basis of an exchange of correspondence between the appointing authority and the administrator.

statements and representations of the mayor. See *Debnam* v. *Belmont*, 388 Mass. 632, 635 (1983). However, we are unable to review the commission's decision because the commission's conclusion of bad faith, and its rejection of the mayor's reasons, are not explicated by clear reasoning from adequate subsidiary findings of fact, leaving us uncertain as to the basis of its decision.

The fundamental difficulty is the failure of the commission and the single member to perform the duties imposed by the *fourth* paragraph of G. L. c. 31, § 2(*b*). See note 3, *supra.* That paragraph authorizes the chairman to appoint a member of the commission to hold the required hearing and directs the single member "to report his . . . findings of fact and recommendations to the commission for its action."[15] The hearing in this case was conducted by a single commissioner, but the record appendix, which purports to be a record of "all materials" in the administrative record and which includes the transcript of the hearing before the single member, does not include the required report of findings of fact and recommendations. There is merely the decision of the commission, see note 9, *supra*, signed by the chairman, with the notation that the three commissioners voted in favor of the decision. Thus, the obstacle is not the absence of evidence which may support the commission's decision, as the judge ruled and as the mayor now contends, but rather the absence of findings with regard to that evidence which, on various important points, was conflicting.

To illustrate the point: the only possible direct evidence of personal hostility which appears in the record is a conversation between the mayor and Ryan following the mayor's 1985 reelection. During the political campaign Ryan had worked for those opposing the mayor. The mayor and Ryan both testified to the conversation, but they gave totally different versions of it. According to the mayor, the conversation was entirely benign; Ryan offered his apologies, expressed his desire to be friends, and the mayor said no apology was nec-

---

[15]The single member holding a hearing under G. L. c. 31, § 43, has substantially the same duties.

essary. According to Ryan, the mayor said, "I don't appreci-
ate the things you said about me. I didn't [sic] like you, and
I don't like what you said." The commission's decision makes
no reference at all to this testimony. It is undisputed that the
conversation occurred, but there is no finding as to which of
these two versions was accepted by the commission in spite of
the fact that the finding could be important. The conversa-
tion, though brief by either account, could be seen as bearing
directly and significantly upon the attitude of the parties to-
ward each other.

So too, the commission's decision discusses, and rejects as
inadequate, "the 1985 incident at the race track" — the
event cited by the mayor in support of his conclusion that
Ryan lacked good judgment. Here the findings are inade-
quate and the reasoning is not clear. Presumably the com-
mission refers to the official report of Captain Edward Sasso
that Ryan, on March 23, 1985, at 11:00 P.M., while in uni-
form, was seen "reading a dog program . . . looking at the
tote board [and] then went to a mainline window . . . and
made a bet." The event was not disputed by Ryan; he admit-
ted to betting on that occasion and others as well. Ryan's
response, firmly established by his own testimony and by the
testimony of other Revere police officers, was to the effect
that most Revere police officers (there was testimony that the
number reached ninety-five percent) who worked at Wonder-
land dog track placed bets while on duty. Ryan testified that
he even placed bets for his accuser, Captain Sasso, and a
lieutenant on the force testified that he did not know of any
officer who had not made a bet while on duty at the track.[16]
There was also evidence that approximately two and one-half
years after Ryan was given a three-day suspension for the

---

[16]Indeed there was even testimony by a Revere police officer, admitted
without objection, that "members of the State Racing Commission come
down with tips on bets to be placed on races." There was also testimony by
a Revere police officer that "five guys in the [State Racing] Commis-
sioner's office play dogs. They're the ones that give us the tips on what to
play, all night long down there. All five of them." No inquiry was made as
to whether Ryan was a recipient of such a tip, and there were no findings
on this testimony.

"1985 incident" (the suspension was subsequently withdrawn), George D. Hurley, then acting chief of police of Revere, wrote a memorandum to "all men that work the dog track detail" that "you are being paid to perform the duties of a police officer, not a patron of the dog track. If you must bet on races, at least get someone in civilian clothes to make the wager for you . . . just use a little common sense."[17]

On the basis of the evidence just summarized, the commission concluded that "the practice of wagering by officers working paid details at the track, offensive as it may be, was so all-pervasive throughout the ranks and so clearly tolerated by the then-Chief, that it may not properly be relied upon as justification for the [a]ppointing [a]uthority's action."

The commission's rejection of the events at the dog track lacks a reasoned foundation. The commission appears to regard the practice of wagering by officers working paid details as plainly "offensive," yet the commission attaches no importance to Ryan's participation in that practice. Why this should be so is left entirely unexplained. It is not at all clear that the mayor's judgment of the event should be rejected merely because most of the Revere police force regularly did what Ryan was charged with doing. According to the Hurley memorandum, for example, what Ryan (and most of the other officers) did could be seen as evidence of bad judgment — no "common sense." Police officers, as we have said on another occasion, "must . . . behave in a manner that brings honor and respect for . . . law enforcement personnel. . . . [T]hey implicitly agree that they will not engage in conduct which calls into question their ability and fitness to perform their official responsibilities." *Police Commr. of Boston* v. *Civil Serv. Commn.*, 22 Mass. App. Ct. 364, 371 (1986).[18]

---

[17]The memorandum was in response to a letter Hurley received from a resident of Revere who complained that the officers on duty "bet every race. I think it is disgraceful that at a time when pick-pockets are working full-time, officers of the law aren't." A copy of the letter was attached to the Hurley memorandum, and is included in the record appendix.

[18]The same difficulty is evident in the commission's conclusion that "[Ryan's] record of sick and injured time was not materially different from that of the individual selected for provisional appointment, so this

"[T]he public has an interest in having a police force comprised of competent and able individuals." *Mulgrew* v. *Taunton*, 410 Mass. 631, 635 (1991). In short, the commission must consider and deal with the issue of Ryan's conduct in light of the public interest in a qualified chief of police for Revere, and it must do so consistently with "basic merit principles," as provided in G. L. c. 31, § 1, which gives assurance to all civil service employees that they are "protected from arbitrary and capricious actions."

The administrative process set out in c. 31, § 2(*b*), as we have described it here, is parallel to that provided in G. L. c. 30A, § 11(8), as inserted by St. 1954, c. 681, § 1, which requires "a statement of reasons for the decision [of the agency], including determination of each issue of fact or law necessary to the decision . . . ."[19] In that context the Supreme Judicial Court has said that an agency has the "duty to make subsidiary findings of fact on all issues relevant and material to the ultimate issue to be decided . . . [and] to set forth the manner in which it reasoned from the subsidiary facts so found to the ultimate decision reached." *School Comm. of Chicopee* v. *Massachusetts Commn. Against Discrimination*, 361 Mass. 352, 355 (1972). See also *Costello* v. *Department of Pub. Utils.*, 391 Mass. 527, 535-536 (1984) ("While we can conduct a meaningful review of 'a decision of less than ideal clarity if the agency's path may reasonably be discerned,' we will not 'supply a reasoned basis for the agency's action that the agency itself has not given,' " quot-

---

reason also is insufficient." It is not clear whether the commission is referring to sick time *used* or sick time *accrued*. In either event, there are no subsidiary findings to support its conclusions. What did the commission find was Ryan's record of sick and injured time (the mayor contends that the commission simply misunderstood the attendant records placed in evidence), and what did the commission find was the record of the individual with whom he was compared?

The third reason rejected by the commission was "lack of leadership." That reason was previously rejected by the administrator and therefore is no longer in the case.

[19]General Laws c. 30A, the State Administrative Procedure Act, does not apply to the commission.

ing from *Bowman Transp., Inc.* v. *Arkansas-Best Freight Sys.*, 419 U.S. 281, 285-286 [1974]).

This court has held, in a similar case involving the complaint of a police officer against the commission, that, while the commission is not subject to the State Administrative Procedure Act, "it is still required to articulate the facts on which its decision is based." *Faria* v. *Third Bristol Div. of the Dist. Ct. Dept.*, 14 Mass. App. Ct. 985, 987 (1982). See *Sherman* v. *Rent Control Bd. of Brookline*, 367 Mass. 1, 10-11 (1975). See also Davis, Administrative Law §§ 14, 17 (2d ed. 1980).

"The purpose of the civil service legislation was to protect efficient public employees from partisan political control." *Debnam* v. *Belmont*, 388 Mass. at 635. On the basis of the record before us, we are unable to determine whether that purpose has been well or ill served.

The judgment is vacated. The case is remanded to the Superior Court for remand to the commission. The single member who conducted the hearing shall make the required findings of fact and report those findings and his recommendation to the commission. The parties shall be provided with a copy of the report. The commission may, in its discretion, hear arguments of counsel in respect of the report, but in any event shall consider and act upon the recommendation of the single member as required by the fifth paragraph of § 2(*b*). If the decision of the administrator is to be reversed, the commission must support and explain its finding that the decision of the administrator was not "based upon a preponderance of evidence in the record" before the commission.[20] The Superior Court shall retain jurisdiction.

*So ordered.*

---

[20]The requirement of a "sound and sufficient reason[]" provides the "standard[] established by law" which is the prerequisite to the application of the fifth paragraph of § 2(*b*).