MASSACHUSETTS ASSOCIATION OF MINORITY LAW
ENFORCEMENT OFFICERS *vs.* GERALD T. ABBAN & others.[1]

Suffolk. March 12, 2001. - May 29, 2001.

Present: GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Civil Service,* Decision of Civil Service Commission, Judicial review, Police,
Promotion, Testing, Eligibility list, Failure to raise issue before
commission. *Practice, Civil,* Review respecting civil service. *Police,* Pro-
motional examination. *Constitutional Law,* Equal protection of laws. *Admin-
istrative Law,* Agency's interpretation of statute, Evidence.

A judge in the Superior Court did not err in upholding a decision of the Civil
Service Commission that a city's police department improperly promoted
certain minority police officers over nonminority police officers with higher
test scores, a process known as "bypass," where the department did not
sustain its burden of proving that there was a reasonable justification for
the bypasses, as required by G. L. c. 31, § 2 (*b*); absent such justification,
the bypasses, based purely on race, were not consistent with "basic merit
principles," as defined in G. L. c. 31, § 1 (*e*). [262-265] IRELAND, J.,
dissenting.

In an action brought to review a decision of the Civil Service Commission,
the trial judge properly denied a motion to supplement the administrative
record, brought under G. L. c. 30A, § 14 (6), by an intervener who was
not a party to the original proceedings, where the intervener did not, under
the plain terms of the statute, show good reason for the failure to present
the evidence in question in the proceedings before the commission.
[265-267] IRELAND, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on
January 15, 1999.

The case was heard by *John M. Xifaras,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

[1]Briefs were filed in the present appeal on behalf of the following police of-
ficers: Gerald T. Abban, James MacDonald, John McLean, Raymond R.
Mosher, John T. Pels, and Richard M. Keefe (Abban brief); Robert Burns,
Harry Byrne, Jr., Brendan Flynn, Bernard Greene, Brian Latson, Michael
Locke, Richard MacDonald, Kelly O'Connell, Michael O'Connor, Norberto
Perez, Thomas Settipani, Thomas Shone, Eugene Valliere, Herbert White, and
Michael Wosny (Burns brief); Keith Carlson, James Kelly, Thomas Matheson,
and John Rice (Carlson brief).

*Rheba Rutkowski* for the plaintiff.

*John M. Becker* (*Alan H. Shapiro* with him) for Robert Burns & others.

*Christopher J. Muse* for Gerald T. Abban & others.

*James F. Lamond* was present but did not argue.

CORDY, J. The Massachusetts Association of Minority Law Enforcement Officers (MAMLEO) appeals from a ruling of a judge in the Superior Court upholding a decision of the Civil Service Commission (commission) that the police department of Boston (police department) improperly promoted certain minority police officers to the ranks of sergeant and lieutenant over nonminority defendants with higher test scores. MAMLEO, a plaintiff intervener in the Superior Court proceeding and not a party to the original proceedings before the commission, argues that the judge erred as a matter of law in upholding the commission's decision, and abused his discretion in denying MAMLEO's motion to supplement the administrative record.[2] The police department did not appeal from the Superior Court judge's decision. We granted MAMLEO's application for direct appellate review, and now affirm the judgment of the Superior Court.

*Background.* On January 30 and October 2, 1996, the police department made promotions to the ranks of sergeant and lieutenant from certified lists ranking each candidate based on his or her score on a September 12, 1992, civil service promotional examination. The examination had been developed by the State Department of Personnel Administration, now the human resources division (division), in compliance with a 1991 amendment to a Federal consent decree entered in Massachusetts Ass'n of Afro-American Police, Inc. *vs.* Boston Police Dep't, No. 78-529-McN (D. Mass. 1980). See note 5, *infra*. For most of the promotions, the police department selected the highest scoring candidates in rank order.[3] However, the police department departed from strict rank order in promoting six minority

[2]MAMLEO's motion to supplement the administrative record appears to have been pursuant to G. L. c. 30A, § 14 (4) and (6).

[3]"The administrator shall establish, maintain and revise eligible lists of persons who have passed each examination for appointment to a position in the official service. The names of such persons shall be arranged on each such

officers to sergeant and two minority officers to lieutenant, over various nonminority officers with higher civil service examination scores, a process known as "bypass." *Bielawski* v. *Personnel Adm'r of the Div. of Personnel Admin.*, 422 Mass. 459, 460 (1996). See G. L. c. 31, § 27. The examination scores of the minority officers who were promoted were no more than two points lower than those of the nonminority officers who were bypassed.

As required by Massachusetts civil service law, the police department provided reasons for these bypasses to the State personnel administrator. See *id.* The reasons given were: (1) "to ensure compliance with current EEOC [United States Equal Employment Opportunity Commission] guidelines,"[4] (2) "as a result of the [c]onsent [d]ecree between the [police department] and [MAMLEO],"[5] and (3) that the "promotion of a limited number of black officers to sergeant and lieutenant was constitutionally permissible" under the strict scrutiny standard

---

list . . . in the order of their marks on the examination based upon which the list is established." G. L. c. 31, § 25.

[4]More specifically, the police department argued that the bypasses were necessary to comply with the so-called "four-fifths rule," 29 C.F.R. § 1607.4(D) (1998), which states that a selection rate for any race, sex, or ethnic group that is less than four-fifths the rate for the group with the highest rate will generally be regarded by the Federal enforcement agencies as evidence of adverse impact. This is not a "rule," however, because violation of this benchmark, "standing alone [that is, in the absence of a valid consent decree], is *not* conclusive evidence of discrimination" (emphasis added). *Boston Police Superior Officers Fed'n* v. *Boston*, 147 F.3d 13, 21 (1st Cir. 1998) (*Superior Officers*).

[5]The consent decree resulted from a 1978 lawsuit by the Massachusetts Association of Afro-American Police, Inc. (MAAAP), predecessor to MAMLEO, which alleged that the police department's promotional policies were racially biased against African-American police officers. On September 16, 1980, all parties entered into the consent decree, approved and ordered by the United States District Court for the District of Massachusetts, that set certain numerical goals for promoting African-American officers to the rank of sergeant and called for future promotional examinations to be validated in accordance with EEOC guidelines, 29 C.F.R. §§ 1607.1 et seq. The consent decree was extended in 1985, 1990, and 1991. The last extension, in 1991, provided that the consent decree would expire on creation of an eligibility list from the 1992 promotional examination.

applied to equal protection claims.[6] The personnel administrator approved the bypasses.[7]

The bypassed officers appealed to the commission pursuant to G. L. c. 31, § 2 (b),[8] and the police department responded with a motion to dismiss. While the motion was pending before the commission, the United States Court of Appeals for the First Circuit issued its decision in *Boston Police Superior Officers Fed'n* v. *Boston*, 147 F.3d 13 (1st Cir. 1998) (*Superior Officers*), see note 10, *infra*, ruling that the consent decree relied on by the police department applied only to promotions to the rank of sergeant, not to promotions to lieutenant, *and* had expired in April, 1995. *Id.* at 17. The commission invited the parties to submit additional argument addressing the impact, if any, of that ruling on the cases pending before it. The police department and the bypassed officers each submitted supplemental legal memoranda arguing that the *Superior Officers* decision supported their respective positions. These memoranda were added to the record before the commission, which was not otherwise augmented by the parties.

*Administrative action.* The fundamental purpose of the civil service system is to guard against political considerations, favoritism, and bias in governmental hiring and promotion. *Cambridge* v. *Civil Serv. Comm'n*, 43 Mass. App. Ct. 300, 304 (1997), and cases cited. The commission is charged with ensuring that the system operates on "[b]asic merit principles," as defined in G. L. c. 31, § 1,[9] absent properly documented and supported bases for departing from such principles in particular

---

[6]In its February 5, 1996, letter to the division, the police department stated that its third reason for the bypasses was simply "to ensure compliance with . . . applicable federal and state law." This vague rationale was clarified by the time of the commission hearing, and recharacterized by the commission as described above.

[7]The appointments of the minority officers were effective on approval by the personnel administrator. *MacHenry* v. *Civil Serv. Comm'n*, 40 Mass. App. Ct. 632, 634-635 (1996).

[8]General Laws c. 31, § 2 (b), provides, in pertinent part: "[The commission shall] hear and decide appeals by a person aggrieved by any decision, action, or failure to act by the [personnel] administrator . . . ."

[9]General Laws c. 31, § 1, provides, in pertinent part: " 'Basic merit principles', shall mean . . . (e) assuring fair treatment of all applicants and employees in all aspects of personnel administration without regard to political affiliation, race, color, age, national origin, sex, marital status, handicap, or

cases. In the context of carrying out these responsibilities, and after holding hearings on September 11, 1997, and September 2, 1998, the commission ruled that the bypasses proposed by the police department were improper.

In reaching its decision, the commission applied the standard of review required by the governing statute, G. L. c. 31, § 2 (*b*): "to find whether, on the basis of the evidence before it, the appointing authority has sustained its burden of proving [by a preponderance of the evidence] that there was reasonable justification for the action taken by [it]" (i.e., promoting on considerations other than merit). *Cambridge* v. *Civil Serv. Comm'n, supra* at 303, citing *Mayor of Revere* v. *Civil Serv. Comm'n*, 31 Mass. App. Ct. 315, 320 n.10, 321 n.11, 322 n.12 (1991). In this context, reasonable justification means "done upon adequate reasons sufficiently supported by credible evidence, when weighed by an unprejudiced mind, guided by common sense and by correct rules of law." *Selectmen of Wakefield* v. *Judge of First Dist. Court of E. Middlesex*, 262 Mass. 477, 482 (1928).

Applying this standard to the police department's enumerated reasons for departing from rank order promotions, the commission found them and the police department's reliance on the *Superior Officers* case unpersuasive.[10] In addressing two of the three reasons the police department had given for making the bypasses, the commission noted that the *Superior Officers* decision had made it clear that the consent decree had expired in April, 1995, prior to the 1996 promotions at issue here, see *Superior Officers, supra* at 17, and that the EEOC guidelines were not enforceable in this context in the absence of the consent decree. See note 4, *supra.* Therefore, neither the decree

religion and with proper regard for privacy, basic rights outlined in this chapter and constitutional rights as citizens . . . ."

[10]In the *Superior Officers* decision, the United States Court of Appeals for the First Circuit upheld against an equal protection challenge the police department's promotion (during the period the consent decree was still effective) of one African-American officer, Rafael Ruiz, to the rank of lieutenant over three white officers higher on the promotional list. The court affirmed the finding of a lower Federal court that "Ruiz's promotion served the compelling state interest of remedying the effects of past racial discrimination, and that the promotion was narrowly tailored to meet that goal." *Superior Officers, supra* at 14.

nor the EEOC guidelines provided a reasonable justification for bypasses that came after the decree's expiration.[11]

That left only the police department's constitutional argument to support the bypass promotions, i.e., that those promotions would survive a constitutional challenge under the equal protection clause. The commission found this constitutional argument to be misplaced, because its inquiry in a bypass appeal is very different from that required for an equal protection claim. In deciding bypass appeals, the commission must determine whether the appointing authority has complied with the requirements of Massachusetts civil service law for selecting lower scoring candidates over higher scoring candidates, and not whether those promotions might pass constitutional muster if challenged in some other forum on equal protection grounds. The commission concluded that the police department had failed to justify the challenged promotions as required by State law: "Upon expiration of the consent decree, the bypasses, based purely on race," a factor listed in G. L. c. 31, § 1 (*e*), as incompatible with basic merit principles, "no longer comport" with such principles.[12]

As a remedy, the commission ordered the division to place the bypassed officers at the top of the list of candidates for promotion, reviving a candidate's eligibility if necessary, so that

---

[11]The Federal court also concluded that neither the original consent decree nor its subsequent amendments ever required the police department to conform to EEOC guidelines in the promotion of lieutenants, as opposed to sergeants. *Superior Officers*, *supra* at 17.

[12]The commission noted that, even in the absence of the consent decree, the police department was not without options for pursuing its goals: "[C]ivil service law allows for special certifications based on race, color, national origin or sex. Personnel Administration Rules, PAR 10. [The division's] rules for special certification based on race requires the appointing authority to request special certification in accord with the appointing authority's affirmative action plan on file with the administrator. The administrator will then certify the names of the individuals who are members of the protected group. The analysis under 'PAR 10' appeals is substantially similar to that of the strict scrutiny standard for protected classes under an equal protection claim . . . . *With the expiration of the consent decree, [the police department] must, in the future, rely on this rule to request special certifications*" (emphasis added). (Citation omitted.)

the police department would have to consider each officer when it next made promotions to the rank of sergeant or lieutenant.[13]

*Superior Court ruling.* The police department sought review of the commission's decision in the Superior Court pursuant to G. L. c. 30A, § 14, and G. L. c. 31, § 44,[14] arguing that it properly considered race in the 1996 promotions. The police department reasoned that race-based bypasses were not inconsistent with established merit principles in this particular case, because the bypasses were being used to remedy the police department's past racial discrimination.

MAMLEO was allowed to intervene in the Superior Court action, and filed a motion seeking to supplement the administrative record with extensive evidentiary materials that were not before the commission. Those materials had been part of the underlying record used by the police department and MAMLEO to support their argument in *Superior Officers, supra* at 23-24,[15] that the promotion in that case was a "sufficiently narrow remedy" to address past racial discrimination by the police department. The materials included expert witness affidavits purportedly demonstrating that the 1992 examination did not validly distinguish among officers scoring within three points of each other, that such officers must therefore be considered functionally equivalent for promotion purposes, and that their functionally equivalent test scores should be "banded" together for the purpose of making promotion decisions. MAMLEO's motion to supplement the record was denied. The judge's review of the commission's decision was therefore based solely on the record that had been before the commission.

"In reviewing [the commission's] action under G. L. c. 30A, § 14 (7), it was not open to the Superior Court judge to

---

[13]On January 13, 1999, the commission issued a clarification of decision, extending relief to seventeen additional bypassed officers. On May 27, 1999, the commission granted the appeals of four more bypassed officers.

[14]General Laws c. 31, § 44, provides, in pertinent part: "Any party aggrieved by a final order or decision of the [civil service] commission following a hearing . . . may institute proceedings for judicial review in the superior court within thirty days after receipt of such order or decision. Any proceedings in the superior court shall, insofar as applicable, be governed by the provisions of [G. L. c. 30A, § 14] . . . ."

[15]The police department was a party and MAMLEO was an intervener in the *Superior Officers* case.

substitute his judgment for that of the commission." *Thomas* v. *Civil Serv. Comm'n*, 48 Mass. App. Ct. 446, 451 (2000). Instead, the judge was required by § 14 (7) to "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." *Iodice* v. *Architectural Access Bd.*, 424 Mass. 370, 375-376 (1997); *School Comm. of Brockton* v. *Civil Serv. Comm'n*, 43 Mass. App. Ct. 486, 490 (1997). Here, the judge affirmed the decision of the commission:

> "This Court is satisfied that the administrative record fails to support plaintiffs' contention that the [c]ommission committed an error of law. Nor is the argument that the [c]ommission's ruling is arbitrary, capricious, or an abuse of discretion supported by the record. Rather . . . the record indicates that the [c]ommission acted lawfully and within its discretion by finding the [police department's] bypasses lacked a sound and sufficient reason and clashed with basic merit principles."

The judge's evaluation of the commission's ruling is a sound one, "setting forth his reasoning . . . in a full and clear discussion," *Iodice* v. *Architectural Access Bd.*, *supra* at 371, and we employ it as the basis for our own brief analysis of the commission's ruling.

Like the Superior Court, we review the commission's decision under G. L. c. 31, § 44, "to determine if it violates any of the standards set forth in G. L. c. 30A, § 14 (7),[16] and cases construing those standards." *Plymouth* v. *Civil Serv. Comm'n*, 426 Mass. 1, 5 (1997). The plaintiff bore the burden of demonstrating the invalidity of the commission's ruling. *Coggin* v. *Massachusetts Parole Bd.*, 42 Mass. App. Ct. 584, 587 (1997). *Merisme* v. *Board of Appeals on Motor Vehicle Liab. Policies & Bonds*, 27 Mass. App. Ct. 470, 474 (1989). This is a heavy

---

[16]General Laws c. 30A, § 14 (7), provides, in pertinent part: "The court may affirm the decision of the agency, or remand the matter for further proceedings before the agency; or the court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is . . . (c) Based upon an error of law; or . . . (g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law."

burden, for we also give due weight to the commission's expertise, as required by § 14 (7). See *Iodice* v. *Architectural Access Bd., supra* at 375-376; *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 618 (1997) ("In general, we grant substantial deference to an interpretation of a statute [e.g., the civil service statutes] by the administrative agency charged with its administration"); *Boston Police Superior Officers Fed'n* v. *Labor Relations Comm'n*, 410 Mass. 890, 892 (1991) (considerable deference generally accorded agency decision, unless agency commits error of law).

The commission properly placed the burden on the police department to establish a reasonable justification for the bypasses, see *Cambridge* v. *Civil Serv. Comm'n*, 43 Mass. App. Ct. 300, 303 (1997), and properly weighed those justifications against the fundamental purpose of the civil service system, *id.* at 304, to ensure decision-making in accordance with basic merit principles. G. L. c. 31, § 1 (*e*). See note 9, *supra.* In rejecting the three reasons given by the police department for the challenged race-based bypasses — the consent decree (that had expired), the EEOC guidelines (that were no longer enforceable after the consent decree expired), and a constitutional rationale (that was inapposite) — the commission acted well within its discretion. In the circumstances of this case, the reasons proffered by the police department simply failed to justify the 1996 promotions at issue. The commission, and the Superior Court judge on review, correctly concluded that without the consent decree's mandate, race, a consideration specifically identified by the Legislature in G. L. c. 31, § 1 (*e*),[17] as inconsistent with basic merit principles, cannot be used to justify a bypass. While civil service law allows consideration of race in promotion decisions as part of an approved affirmative action plan (see note 12, *supra*), there was no such plan here and therefore the police department improperly based these promotions on race.

We have examined the entire administrative record, see *Mayor*

---

[17] "There is no ambiguity in the [statutory] language . . . and where the language of a statute is plain there is no room for speculation as to its meaning or its implication. The Legislature must be presumed to have meant what the words plainly say . . . ." *Condon* v. *Haitsma*, 325 Mass. 371, 373 (1950).

*of Revere* v. *Civil Serv. Comm'n*, 31 Mass. App. Ct. 315 322 (1991) ("we must inquire whether there is substantial evidence in the record before the commission to support the commission's decision"), and taken into account whatever in the record would fairly detract from the supporting evidence's weight. *Cobble* v. *Commissioner of the Dep't of Social Servs.*, 430 Mass. 385, 390 (1999). We conclude that the commission's ruling is grounded in substantial evidence found in the administrative record. Its conclusion that the challenged bypasses are unjustified, and inconsistent with basic merit principles, is neither arbitrary, capricious, an abuse of discretion, nor a legal error.

*Denial of MAMLEO's motion to supplement the administrative record.* Each of MAMLEO's contentions in this appeal relies on MAMLEO's assertion that the 1992 promotional examination was invalid for use in a strict rank order promotion system.[18] There was, however, nothing in the record of the proceeding before the commission that supported this contention. Therefore, MAMLEO moved to supplement the administrative record with evidence it contended would demonstrate that a more valid scoring system for the 1992 promotional examination, which treated candidates who scored within a three-point band as functionally equivalent (banding), would have eliminated any bypass challenges.[19] (As noted above, no minority candidate who was promoted in 1996 based on that examination scored more than two points less than a nonminority candidate who was bypassed.) We therefore need only assess the validity of the judge's denial of that motion, as this issue decides MAMLEO's appeal.

A motion for leave to present supplemental evidence pursuant

[18]MAMLEO makes the following basic arguments in its main brief: (1) the qualifications of the higher ranking white officers were not demonstrably superior to those of the minority candidates; (2) the test results fail to distinguish among the relative qualifications of candidates within a certain test score range; (3) the commission is requiring the police department to use a selection procedure that is not based on any reliable measure of candidates' qualifications; (4) the ranking procedure based on the test scores was invalid; and (5) the minority officers who were promoted had qualifications which were equivalent to those of white officers not promoted.

[19]If the record had been supplemented, the proceeding would have then been remanded to the commission for further review. G. L. c. 30A, § 14 (6).

to G. L. c. 30A, § 14 (6), is addressed to the sound discretion of the judge. *Northeast Metro. Regional Vocational Sch. Dist. Sch. Comm.* v. *Massachusetts Comm'n Against Discrimination,* 35 Mass. App. Ct. 813, 817 (1994). In assessing whether a judge has abused his discretion, "we do not simply substitute our judgment for that of the judge, rather, we ask whether the decision in question 'rest[s] on whimsy, caprice, or arbitrary or idiosyncratic notions.' " *Boulter-Hedley* v. *Boulter,* 429 Mass. 808, 811 (1999), quoting *Bucchiere* v. *New England Tel. & Tel. Co.,* 396 Mass. 639, 642 (1986). See *Long* v. *George,* 296 Mass. 574, 578-579 (1937), quoting *Davis* v. *Boston Elevated Ry.,* 235 Mass. 482, 497, 502 (1920) (abuse of discretion defined as view or action "that no conscientious judge, acting intelligently, could honestly have taken").

Section 14 (6) provides:

> "If application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material to the issues in the case, *and that there was good reason for failure to present it in the proceeding before the agency,* the court may order that the additional evidence be taken before the agency upon such conditions as the court deems proper. The agency may modify its findings and decision by reason of such additional evidence and shall file with the reviewing court, to become part of the record, the additional evidence, together with any modified or new findings or decision" (emphasis added).

MAMLEO argues that the additional evidence proffered is material to the issues presented in this case, see note 18, *supra,* but fails, under the plain terms of the statute, to show good reason for failure to present the evidence in the proceeding before the commission. MAMLEO explains that it was not a party to the proceedings before the commission, and thus cannot account for "why the underlying record [concerning promotional test validation and banding] was not presented along with the *Superior Officers* decision." MAMLEO protests, however, that "the proper interpretation of c. 31 should not turn on a purported requirement that MAMLEO intervene in every agency proceeding involving the [police department]." The plain language of

the statute imposes no such requirement. The police department has not provided a "good reason" for its "failure" to present the banding evidence to the commission, and MAMLEO "cannot account" for the police department's failure to present such evidence, so the statutory requirements for supplementing the administrative record are simply not met.

To permit MAMLEO to supplement the record in the circumstances of this case would be, in essence, permitting it to retry its claim on another theory. This is not a proper use of § 14 (6). See *Fanion* v. *Director of the Div. of Employment Sec.*, 391 Mass. 848, 850-851 (1984). MAMLEO claims that it would have presented its defense of the bypass promotions before the commission differently from the method the police department chose, but both the plain language of § 14 (6) and our interpretation of § 14 (6) in the *Fanion* case prevent MAMLEO from retrying the present case using a theory. (banding) and evidence that could have been presented during the original proceeding. The judge did not abuse his discretion in denying MAMLEO's motion.[20]

---

[20]Our conclusion is not altered by the fact that a reference to banding appears in the 286-page record that was before the commission. That single reference is found in the police department's supplemental memorandum of law on the *Superior Officers* decision, submitted to the commission, in which the police department simply quotes the following passage from that Federal case:

> "[T]here was unanswered evidence that the one-point difference between [the promoted minority candidate's] score and that of the [bypassed] white Plaintiffs was, as a matter of testing accuracy, negligible. According to the [division's] expert testimony, 'candidates who scored within a three-point band should be considered functionally equivalent . . . and equally qualified to successfully perform the job as any other person in that score band.' " *Id.* at 24.

MAMLEO and the dissent place great weight on this brief passage in the *Superior Officers* decision, the only mention of banding in a lengthy opinion. See *post* at 269. However, banding is not even listed among the court's reasons for rejecting the equal protection challenge to the single bypass decision at issue. *Id.* at 25. In addition, this quoted passage is immediately followed in the *Superior Officers* decision by a footnote making it clear that the " 'banding' approach" is still a matter of some controversy in the Federal courts. *Id.* at 24 n.5.

Both the commission and the judge understandably relied on a Federal case to establish the termination date of a Federal consent decree. The commission and the judge need not have placed *further* reliance on the *Superior Officers*

*Conclusion.* Because the other arguments raised by MAM-LEO rely in significant part on assertions based on materials excluded by the denial of MAMLEO's motion to supplement the administrative record, we need not consider them here.[21]

The judgment of the Superior Court is affirmed.

*So ordered.*

IRELAND, J. (dissenting). I respectfully dissent from the court's opinion because, in my view, both the Civil Service Commission (commission) and the Superior Court judge erred in declining to consider available and relevant evidence. Specifically, MAMLEO's motion to supplement the record with evidence pertaining to the 1992 examination and the "functional equivalence" of those candidates falling within a three-point band should have been granted. Without the benefit of that proffered evidence, both tribunals perceived an inconsistency between the Boston police department's (department's) hiring practices and governing civil service protocol where, in reality, no such inconsistency existed.

Questions abound regarding the handling and resolution of these proceedings. First, as the court noted, the police department opted not to pursue an appeal, *ante* at 257, which I find remarkable in a case that may well have had a major impact on affirmative action appointments throughout the State. Second, no apparent logical reason supports the police department's decision to withhold the banding evidence — evidence that might very well have tipped the balance in its favor before the

---

case as a source of expert opinion regarding the examination. Indeed, *Superior Officers* explicitly limited its own reach: "Our conclusion that the [police department] was justified in taking race-based remedial action is based strictly on [the] unique circumstances [of this case], *and does not give the [police department] a license to depart from strict rank order in future promotions*" (emphasis added). *Id.* at 25.

[21]The provisions of State civil service law at issue here do not preclude any aggrieved individual or group from bringing a discrimination action under the appropriate provisions of State and/or Federal antidiscrimination law.

commission.[1] Last, and similarly puzzling, is the judge's treatment of *Boston Police Superior Officers Fed'n* v. *Boston*, 147 F.3d 13 (1st Cir. 1998) (*Superior Officers*).[2] In affirming the commission's ruling, the Superior Court approved of its incorporation and reference to that decision. In my opinion, however, the commission's selective reading of the Federal court's opinion — borrowing certain conclusions and overlooking others — is suspect.

For instance, the Superior Court order recognizes, "[t]he Commission properly relied on [*Superior Officers, supra* at 17] to find that '[o]nce the consent decree expired, the reasonable justification for strictly race based promotions, also ended.' " Seeing how both the commission and the Superior Court gave careful consideration to the Federal court's opinion, I am hard pressed to understand how they could overlook the "unanswered evidence that the one-point difference between [the minority candidate's] score and that of the [nonminority officers] was, as a matter of testing accuracy, negligible." And that, "[a]ccording to the [human resources division's] expert testimony, 'candidates who scored within a three-point band should be considered functionally equivalent . . . and equally qualified to successfully perform the job as any other person in that score band.' " *Id.* at 24. Given that the police department, itself, "conclu[des] that it had not yet succeeded in remedying the effects of its history of discrimination," *id.* at 21, one can only speculate as to why this crucial evidence was not presented to the commission. Whatever the underlying rationale may be, it is clear that the Superior Court's refusal to consider MAMLEO's supplemented materials compounded this error.

[1]As the court notes, MAMLEO could "not account" for this omission either. *Ante* at 267. However, given that MAMLEO was not a party, it would be particularly difficult for it to explain the police department's "tactical" decisions.

[2]As the court mentions, the United States Court of Appeals for the First Circuit upheld the promotion of a minority candidate whose "performance on the 1992 [examination] was not only passing, but only one point shy of that of the [non-minority] candidates bypassed for his promotion." *Boston Police Superior Officers Fed'n* v. *Boston*, 147 F.3d 13, 24 (1st Cir. 1998) (*Superior Officers*). In reaching its conclusion, the Federal court weighed heavily the police department's well-documented "history of racial discrimination" and its "halting and, at times, quite modest progress in remedying [that] earlier discrimination." *Id.* at 22, 23.

Having been left out of the proceedings before the commission, MAMLEO petitioned the Superior Court to supplement the record with the pertinent documents associated with the *Superior Officers* litigation. Foremost among these materials is a 1994 letter from the personnel administrator expressing the "view that all applicants within any three-point score band are functionally equivalent with respect to the quality or knowledge being measured and, therefore, equally qualified to successfully perform the job as any other person in that score band." As discussed below, evidence that the promoted candidates were "functionally equivalent" to the bypassed candidates markedly shifts the posture of this case.

Beyond the confines of the *Superior Officers* case, the record contained additional references to the 1992 examination and the gauging of candidates' scores. For instance, the brief submitted by the police department to the commission addressed the "negligible" difference between the minority candidates' scores and the bypassed candidates' scores. After quoting the "unanswered evidence" language from *Superior Officers, supra* at 24, the police department argued: "Here, the grade span is at most two points, which it submits falls within the 'functionally equivalent' band described by the [human resources division]. . . . The evidence before the Commission thus makes abundantly clear that the black officers who were promoted shared virtually identical qualifications with the white [candidates]." See A. Cella, Administrative Law and Practice § 1562, at 124 (1986) (statutory scheme "recognizes that there may indeed be circumstances where additional or new evidence may be useful in the just and equitable resolution of the problem before the court"). Because the Superior Court judge knew that material, "unanswered evidence"[3] existed, failing either to (1) grant MAMLEO's motion to supplement the record; or (2) remand the matter to the commission for additional findings, see G. L. c. 30A, § 14 (4), (6) & (7); *Northeast Metro. Regional*

---

[3]This is not to say that the evidence would have gone uncontested in the present litigation. Nor do I insinuate that the findings in *Superior Officers, supra* at 13, 14, are binding on these proceedings. Rather, these findings are significant to the extent that they provide notice to both the commission and the Superior Court that reliable evidence existed vis-à-vis the imprecision of the examination-scoring system.

*Vocational Sch. Comm.* v. *Massachusetts Comm'n Against Discrimination*, 35 Mass. App. Ct. 813, 814 (1994), constituted, in my opinion, an abuse of discretion. See *Douglas Envtl. Assocs., Inc.* v. *Department of Envtl. Protection*, 429 Mass. 71, 75 (1999).

In these circumstances, restricting the scope of the record essentially guaranteed the outcome. The "banding" evidence bears directly on the crux of the case, i.e., "whether, on the basis of the evidence before it, the appointing authority has sustained its burden of proving that there was reasonable justification for the action taken by the appointing authority." *Cambridge* v. *Civil Service Comm'n*, 43 Mass. App. Ct. 300, 303 (1997). See G. L. c. 31, § 2 (*b*). In assessing the reasonableness of the police commissioner's justification, it is important to recognize that any differential in examination score was of minimal significance. As the submitted information suggests, compliance with EEOC regulations need not contradict governing civil service law. Where, as here, a hiring authority promotes one "functionally equivalent" candidate over another, a conclusion that "basic merit principles," G. L. c. 31, § 1, have been violated is dubious in light of its reliance on a knowingly incomplete record.

By neglecting to consider this pertinent information, both the commission and the Superior Court have placed their imprimatur on an employment practice that will frustrate the Boston police department's admirable attempts to eradicate the vestiges of long-standing discrimination. See *Superior Officers, supra* at 25 (decision motivated by department's "history of past discrimination, and statistics indicating that affirmative action was appropriate to avoid potentially actionable disparate impact in this situation"). Because a decision of great magnitude — one with implications in both the civil service context as well as antidiscrimination law — was rendered, in my view, without regard to critical evidence, I must dissent.