CONSTANCE MATULEWICZ & another[1] *vs.* PLANNING BOARD OF
NORFOLK (and a companion case[2]).

Norfolk. September 5, 2002. - October 25, 2002.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Subdivision Control,* Approval not required, Planning board, Frontage on
public way. *Way,* Public: subdivision control.

A Superior Court judge properly annulled a decision of a town's planning
board that declined to issue to the owners of a tract of land an endorse-
ment (ANR endorsement) that approval under the subdivision control law
was not required in order to divide their land, and the judge correctly
ordered an ANR endorsement, where the evidence amply supported the
judge's finding that every lot within the tract had frontage on a way that
the town's clerk had certified was a way maintained and used as a public
way, and thus was within the statutory exceptions to "subdivision" in
G. L. c. 41, § 81L, twelfth par. [42-46]

CIVIL ACTIONS commenced in the Superior Court Department
on May 28, 1998, and April 14, 1999, respectively.

The consolidated cases were heard by *Elizabeth B. Donovan,*
J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Douglas H. Wilkins* for Planning Board of Norfolk.

*Paul G. Murphy* for Constance Matulewicz & another.

COWIN, J. One who owns and wishes to divide a tract of land
may seek, under § 81P of the subdivision control law (G. L.
c. 41, §§ 81K-81GG), an endorsement from a planning board
that approval under the subdivision control law is not required
(hereafter ANR endorsement). G. L. c. 41, § 81P.[3] This endorse-

---

[1] Alexander Matulewicz.

[2] Planning Board of Norfolk *vs.* Alexander Matulewicz & another.

[3] Section 81P states, in relevant part: "Any person wishing to cause to be
recorded a plan of land . . . who believes that his plan does not require ap-
proval under the subdivision control law, may submit his plan to the planning

ment "shall not be withheld unless the plan shows a subdivision." *Id.* The term "subdivision" is defined to exclude a parcel if, inter alia, "every lot within the tract so divided has frontage on (*a*) a public way or a way which the clerk of the city or town certifies is maintained and used as a public way." G. L. c. 41, § 81L, twelfth par.[4] A judge in the Superior Court annulled the decision of the planning board of Norfolk (board) and ordered an ANR endorsement. The board appealed and we transferred the case to this court on our own motion. We affirm the judgment of the Superior Court as herein modified.

1. *Background.* This case concerns whether a plan for division of a tract of land in the town of Norfolk (town) showed a "subdivision." The plan shows two proposed lots with frontage on Fredrickson Road in Norfolk (road). On April 28, 1998, at the plaintiffs' request, the town clerk certified "that according to the records of Norfolk, Fredrickson Road from Grove Street to the dwelling of Alexander and Constance Matulewicz as shown on Assessors Map 13, a total distance of 2,415 feet, more or less, is maintained and used as a Public Way in the Town of Norfolk." The plaintiffs sought from the board an ANR endorsement on the plan, and provided the clerk's certificate. In a May 14, 1998, decision, the board declined to issue the ANR endorsement. (It does not appear the board held an evidentiary hearing, but it did consider documentary evidence.) The board concluded:

"The Town has only legally accepted 1,953 feet of Fredrickson Road [which the town did at a 1933 town

board . . . and, if the board finds that the plan does not require such approval, it shall forthwith, without a public hearing, endorse thereon . . . the words 'approval under the subdivision control law not required' or words of similar import . . . . Such endorsement shall not be withheld unless such plan shows a subdivision."

[4]Clauses (*b*) and (*c*) provide two other exceptions: "(*b*) a way shown on a plan theretofore approved and endorsed in accordance with the subdivision control law, or (*c*) a way in existence when the subdivision control law became effective in the city or town in which the land lies, having, in the opinion of the planning board, sufficient width, suitable grades and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon or served thereby, and for the installation of municipal services to serve such land and the buildings erected or to be erected thereon." G. L. c. 41, § 81L, twelfth par.

meeting]. The remaining 462 feet was a driveway to the Matulewicz house. The Planning Board maintains that this driveway was given to the Town only as a 'gift of land' and that it has never been accepted as a public way. The parcel of land has not been identified for a particular use and could affirm [*sic*] that no action has been taken by the Town to accept this portion of Fredrickson Road as a public way by either prescription, dedication prior to 1846 or by layout in accordance with [G. L. c. 82]. . . . No evidence is provided that would lead the Board to conclude that this portion of Fredrickson Road is an adequate way, that is . . . one of the three types of ways specified in [G. L. c. 41, § 81L]."

As for the clerk's certificate, the board stated:

"Although the Norfolk Town Clerk has certified that Fredrickson Road from Grove Street to the dwelling of Alexander and Constance Matulewicz is maintained and used as a public way for a total distance of 2,415 feet, we do not concur. The Town is responsible for the 'parcel's' maintenance as a 'gift of land' and does maintain it according to the Highway Superintendent, but that fact does not alter the parcel's status as a way."

The plaintiffs appealed to the Superior Court on May 28, 1998, under G. L. c. 41, §§ 81P and 81BB,[5] seeking, among other things, annulment of the board's decision and an order requiring the board to issue the ANR endorsement. Meanwhile, the board informed the town clerk that there were conflicting maps (showing differing distances for the "public way" portion of the road). Town counsel told her that he was "not happy"

---

[5] A person denied an ANR endorsement may appeal under § 81BB. See G. L. c. 41, § 81P. In that appeal, "[t]he [Superior or Land] court shall hear all pertinent evidence and determine the facts, and upon the facts so determined, shall annul such decision if found to exceed the authority of such board, or make such other decree as justice and equity may require. The foregoing remedy shall be exclusive, but the parties shall have all rights of appeal and exceptions as in other equity cases." G. L. c. 41, § 81BB.

with her issuance of the certificate.[6] At the request of town counsel, the town clerk signed an affidavit on January 28, 1999, drafted by town counsel, stating, in substance, that a 462 foot portion of the road was never accepted as a public way and that her "conclusion that it has been maintained 'as a public way' [was] not accurate."

The board filed its own action in the Superior Court on April 14, 1999, seeking, under G. L. c. 41, § 81Y, annulment of the clerk's certificate and a declaration, under G. L. c. 231A, that the plaintiffs' plan requires approval under the subdivision control law and that the last 462 feet of the road is "not within a public way." With the assent of both parties, the two cases were consolidated for trial. After a bench trial, the judge issued findings of fact that we summarize and supplement with uncontested documentary materials in the record.

The plaintiffs own a large tract of land at the end of Fredrickson Road. The road had been an approximately 2,400 foot long private driveway, running from Grove Street to a dwelling, roughly north to south. A portion of the road, thirty feet wide, beginning at Grove Street and running approximately 2,000 feet, became a public way after the former owners deeded it to the town in 1935. The plaintiffs purchased the dwelling and land in 1954.

In the 1990's, the board issued an ANR endorsement on plans for division, and the plaintiffs sold off lots fronting the 2,000 foot public way portion of the road (these were developed with single-family homes). The plans indicated the balance of the road was a private way.

---

[6]The relationship between the board and town counsel was not discussed in the judge's decision. According to the testimony, the board sought town counsel's advice after receiving the letter from the plaintiffs' attorney seeking reconsideration of the 1997 ANR endorsement denial. The testimony also showed that, during the course of discovery in this case, the plaintiffs requested production of documents, specifically a May 6, 1998, memorandum and a July 15, 1994, letter from town counsel for which the board asserted attorney-client privilege. The privilege was asserted at trial as well. The memorandum of May 6, according to the testimony of the chairperson of the planning board, pertained to the length of Frederickson Road that might be a public way, and was in response to the plaintiffs' January 22, 1998, letter seeking reconsideration.

In 1949, the town granted an "easement"[7] to the Boston Edison Company and the New England Telephone and Telegraph Company and seven utility poles were erected along the road for a distance of 2,260 feet. From 1989 to 1995, school buses transporting kindergarten children turned on the grassy area near the plaintiffs' home, with their permission, because the road was a dead end. The town highway department, for purposes of obtaining State funds under G. L. c. 90,[8] denotes approximately 2,400 feet of the road as a public way. The town maintains the entire length of the road: it plows, sweeps, surfaces, and repairs the road as a public roadway, i.e., as a road used by the public, and it mows the grass along the edge of the road. While the town highway department maintains all roads located in the town, whether accepted or unaccepted, it does not maintain private roads, such as those located within a subdivision. The judge found that "[t]he road is 30 feet wide along the entire length."

In 1993, Alexander Matulewicz (Matulewicz) offered to convey the balance of the road to the town. The board said it would support this only if the plaintiffs also gave the town a fifty-foot easement "for *future* through access," connecting the road to Oak View Trail (emphasis in original). The board's stated reason was its policy of encouraging construction of through streets, not dead ends (for public safety, traffic burden, and community planning reasons). The plaintiffs apparently declined.

Matulewicz concluded that it was by error that the entire length of the road had not been conveyed in 1935, and he drafted an article for the 1994 town meeting warrant. The article proposed that the town accept as a gift the balance of the road (about three-tenths of an acre) to "correct" the original, 1935 deed. The article passed, despite the adverse recommendation of the town's advisory board, and the deed of conveyance was executed thereafter.

In 1997, the plaintiffs sought an ANR endorsement on a plan to sell two more lots on the road, fronting beyond the 2,000

---

[7]This was the characterization at trial, although the board disputed it.

[8]Testimony indicated this refers to "money that's given to [the town] by the state on an annual basis and it's a per mile of roadway for maintenance."

foot marker. The board declined the endorsement, stating that the "public portion" of the road had not been extended and there was no evidence that the road was "an adequate way." The plaintiffs sought reconsideration, which was denied.

The ·plaintiffs then sought and received the certificate from the town clerk. When she received the request, as was her custom, the clerk spoke with the highway department superintendent to determine whether the town maintains the road through paving, snow removal, and repair. She thus based her certification on information the highway department supplied. The clerk's experience in certifying streets had been limited to five or six such requests.

Based on these findings, the judge concluded that the road was maintained and used as a public way and she ordered the board to make the ANR endorsement.

2. *Discussion.* As noted, this matter turns on whether the tract of land the plaintiffs seek to divide fits within the statutory exceptions to "subdivision" in G. L. c. 41, § 81L, twelfth par. The clause provides three alternatives for qualifying. See note 4, *supra.* Only clause (*a*) (lots with frontage on public way or way maintained and used as such) is relevant to this appeal. The plaintiffs do not rely on clause (*b*) (way shown on approved plan); the trial judge rejected clause (*c*) for insufficient evidence and the plaintiffs have not argued this on appeal. In addition, there has never been any dispute regarding the "frontage" portion of § 81L, twelfth par. (requiring at least twenty feet of frontage if no distance is otherwise specified by ordinance or bylaw).[9] The case, then, reduces to whether the southerly portion of the road is "a public way or a way which the clerk . . . certifies is maintained and used as a public way." G. L. c. 41, § 81L, twelfth par.

The plaintiffs argued below that the road was a "public way." On appeal, this argument is reduced to a footnote in a brief that otherwise focuses on the "maintained and used as a public way" language. There is good reason for this relegation. The portion of Fredrickson Road at issue here clearly was not proved to be a public way. The judge defined that phrase: "(1) laying

[9]Testimony indicated that the proposed lots had 200 feet of frontage on Fredrickson Road.

out pursuant to the statute, (2) prescription and (3) dedication by the owner and acceptance by the public prior to 1846." Our statutes define "public way" explicitly only in two places, and there identically, as "any way laid out by public authority." G. L. c. 160, § 1 (governing railroads). G. L. c. 161, § 1 (relating to street railways). The only evidence the plaintiffs adduced was the town's maintenance and the 1994 town meeting vote to accept the balance of the road to "correct" the original conveyance. The judge's finding against the plaintiffs seals the fate of this theory. *Clark* v. *Hull,* 184 Mass. 164, 166 (1903) (question of fact for jury whether way was public way).[10]

A more complex question is presented by the "maintained and used as a public way" portion of the § 81L language. We reject the plaintiffs' argument that, absent evidence of fraud, misrepresentation, or duress, we should consider the clerk's certificate as conclusive, irrebuttable evidence that the road is "maintained and used as a Public Way." A clerk is usually called on to "certify" a record on file; "certification" is ordinarily ministerial, and does not require an investigation culminating in an exercise of discretion. Cf. G. L. c. 41, § 81X (relating to clerk's certification requiring only simple reference to clerk's records). As this case indicates, however, the facts in a clerk's § 81L certificate may sometimes be genuinely disputed and susceptible of differing interpretations, and the clerk's records do not necessarily reflect how a particular way has been "maintained and used." Indeed, the clerk's certificate here was not based on anything in the clerk's records, but merely reflected the results of her oral inquiry of another town employee. The statute, moreover, directs de novo review in the Superior Court or in the Land Court. G. L. c. 41, § 81BB. See *Rettig* v. *Planning Bd. of Rowley,* 332 Mass. 476, 479 (1955) ("The duty of the judge [acting under § 81BB] was to conduct a hearing de novo and on the facts he should find to rule upon the validity of the determination of the planning board"). The board argues that the clerk's certificate is merely rebuttable evidence that a

---

[10]Nothing in *Dolan* v. *Board of Appeals of Chatham,* 359 Mass. 699, 701 (1971); *Horn* v. *Crest Hill Homes, Inc.,* 340 Mass. 362, 366 (1960); *Reed* v. *Mayo,* 220 Mass. 565, 567 (1915); *Carr* v. *Berkley,* 145 Mass. 539, 540 (1888); or *W.D. Cowls, Inc.* v. *Woicekoski,* 7 Mass. App. Ct. 18, 19 (1979), on which the plaintiffs rely, persuade us the judge erred.

road is in fact a public way, but this ignores the statutory distinction between "public ways" and "ways maintained and used as public ways." The Legislature made this distinction, and we have recognized it before. See *Casagrande* v. *Town Clerk of Harvard*, 377 Mass. 703, 708 (1979). We will not rewrite the statute to conflate these separate terms. See, e.g., *Matter of a Civil Investigative Demand Addressed to Yankee Milk, Inc.*, 372 Mass. 353, 358 (1977) (every word in statute should be given meaning); *Insurance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass. 184, 189 (1969) (intention to enact barren, ineffective provision not lightly imputed to Legislature); *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 352 Mass. 617, 618 (1967) (no words of statute to be regarded as superfluous).

A plaintiff appealing a planning board's denial of an ANR endorsement under §§ 81P and 81BB establishes a prima facie case by introducing the clerk's certificate attesting that a way is maintained and used as a public way. The board may rebut the prima facie effect of the evidence by introducing evidence warranting a finding that the way is not so "maintained and used." In the absence of contradictory evidence, the clerk's certificate entitles that plaintiff to judgment in his favor. If the board introduces contradictory evidence, the clerk's certificate remains evidence and the case is decided on all the evidence. Giving prima facie evidential weight to the certificate is consistent with G. L. c. 233, § 79F, which provides that "[a] certificate . . . by a city or town clerk . . . that a particular way is a public way as a matter of record shall be admissible as prima facie evidence that such a way is a public way." For the distinction between prima facie evidence and rebuttable presumptions, see W.C. Young, J.R. Pollets, & C. Poreda, Evidence § 301.9, at 138 (2d ed. 1998); P.J. Liacos, M.S. Brodin, & M. Avery, Massachusetts Evidence § 5.5.3, at 229-230 (7th ed. 1999).

The planning board as well should treat the clerk's certificate as *prima facie* evidence that the way in question is maintained and used as a public way. This permits a challenge to the clerk's certificate. Should the clerk mistakenly issue a certificate, the certificate can be overcome by evidence that the way in question is not used and maintained as a public way.

In this case, the judge's thoughtful decision demonstrated that she decided this case based on all the evidence. She gave no undue weight to the clerk's certificate or to the clerk's affidavit controverting that certificate. The board's attempt to dissect isolated portions of the judge's decision to argue that she considered that certificate conclusive is not persuasive. The decision as a whole shows careful attention to the facts, and, in the face of controverted evidence, that the judge evaluated the evidence to support the result the clerk originally reached. The judge did not misconstrue the phrase "maintained and used as a public way" by equating it with "road used by the public," a phrase that appears in her findings of subsidiary facts; she clearly found, ultimately, that the road was maintained and used as a public way.

There is ample support in the record for the judge's findings. The board disputes one finding in particular: that the road is thirty-feet wide for its entire length. The board introduced evidence that the pavement on the disputed portion of Fredrickson Road is thirteen feet wide. But the board's evidence of a thirteen foot width was indirect; no one provided direct evidence that the way was that narrow. Rather, the highway superintendent testified that, based on his interpretation of a State list that even he acknowledged contained "[n]umerous errors," the way would be thirteen feet wide. Other testimony was to the contrary: Matulewicz testified the width was a uniform twenty feet for its entire length, except for the beginning and end. In the 1998 plan, the surveyors put the width of the entire road at thirty feet; the plans contain the notation that the disputed portion of the road is "PAVED — 30.00' WIDE." This is consistent with other documentary evidence. The plan from the early 1990's, which the board endorsed ANR, showed the public portion to be thirty feet wide, and the private portion as well. On conflicting evidence, the judge found the road was thirty feet wide. She had sufficient evidence on which to rely. We accept the judge's findings of fact unless they are clearly erroneous. Mass. R. Civ. P. 52 (a), as amended, 423 Mass. 1402 (1996). See *Commonwealth* v. *Source One Assocs., Inc.*, 436 Mass. 118, 124 (2002), and cases cited.

It is significant that, according to the testimony, the town's

maintenance of the road was uniform throughout. Moreover, the contested portion is, according to the judge's findings, physically identical to the portion that was accepted as a public way. The judge's findings of physical uniformity and uniformity of maintenance support her ultimate finding, that the road is maintained and used as a public way.

The board relies on *Casagrande* v. *Town Clerk of Harvard*, 377 Mass. 703 (1979), to argue that the evidence was legally insufficient to sustain the finding that the disputed road was maintained and used as a public way. In the *Casagrande* case, the road at issue was Sawyer Lane, a statutory private way. There was no clerk's certificate and thus no prima facie case presented. There was no evidence of use as a public way. *Id.* at 708. Sawyer Lane was connected to, and therefore only accessible by, a private way, and the road was narrow (eight to eleven feet wide), with only a portion paved. *Id.* at 705. Although there was some evidence the road was maintained by the town of Harvard, "the Casagrandes did not produce *any evidence* that Sawyer Lane is actually used as a public way or that Sawyer Lane was maintained as a public way" (emphasis added). *Id.* at 708. Here, in contrast, the disputed portion of Fredrickson Road is a continuation of a public way and the road is substantially wider. There was evidence which, although it did not compel a finding that the road was maintained and used as a public way, did allow for such a finding.

The board also presents policy arguments. Many of those arguments, such as the contention that the Superior Court in effect ordered the town to accept a new public way, depend for their potency on equating "maintained and used as a public way" with "public way," a construction we reject. Many others, such as its perception that ordering an ANR endorsement would intrude on town affairs by requiring road improvement, are best addressed to the Legislature.

The matter is remanded to the Superior Court for entry of a judgment declaring that the plan the plaintiffs submitted to the board on April 30, 1998, does not require approval under the subdivision control law. In all other respects, the judgment, as modified, is affirmed.

*So ordered.*