Fecteau, J.
The plaintiffs brought this case against the defendants pursuant to the provisions of G.L.c. 249, §4, for certiorari, challenging the decision of the Planning Board of the Town of Holden to endorse a property plan of LAM Builders, Inc. and Lam Builders, LLC (collectively, “LAM”) as not requiring subdivision approval under G.L.c. 41, §81P. This case is currently *90 before the court on the plaintiffs’ motion for judgment on the pleadings and LAM’s cross motion for judgment on the pleadings.[3] For the following reasons, the plaintiffs’ motion is DENIED and LAM’s cross motion is ALLOWED.

BACKGROUND

The plaintiffs are residents of Chapin Road, Holden, Massachusetts. Defendant LAM Builders, Inc., owns approximately twenty acres of property (“Property”) on Chapin Road. On April 2, 2003, LAM, as the developer of the Property, filed applications with the Planning Board of the Town of Holden (“Board”) seeking endorsement of the Property’s plans as Approval Not Required (“ANR”) because LAM believed that the plans to divide the Property did not constitute subdivisions. LAM submitted two plans with its application, one of which detailed Lots 11 and 12, and one of which detailed Lots 13 and 14. The administrative record of that hearing (“Original Record”) contains those two plans[4] of land prepared by David E. Ross Associates, Inc., for LAM. The plan of Lots 11 and 12 depicts those lots as having a frontage on Chapin Road of 109 feet and 200.03 feet, respectively. This plan also indicates that the “Remaining Land” has a frontage on Chapin Road of 950.70 feet. The plan of Lots 13 and 14 shows that the lots have a frontage on Chapin Road of, respectively, 104.19 feet and 104.34 feet. This plan also shows “ ‘Common Land’ Parcel ‘A.’ ” At its April 8, 2003, meeting, the Board unanimously found that LAM’s plans did not create subdivisions and endorsed the plans as ANR, stating as its reasons that the lots had the required frontage and area.
The plaintiffs filed a complaint with this court on June 6, 2003, pursuant to G.L.c. 249, §4, appealing the Board’s decision based on the argument that LAM’s plan constituted a subdivision and was therefore not eligible for ANR status. The plaintiffs moved for judgment on the pleadings, and, in a December 15, 2003, decision, this court (McCann, J.) denied their motion and remanded the matter to the Board for further hearing. In this decision (“December 2003 Decision”), this court found that the Board’s minutes were empty of findings of fact, thereby creating an inadequate administrative record. Specifically, the record contained no findings concerning: “(1) whether Chapin Road is or is not a public way; (2) whether each of the lots have appropriate frontage on a public way; and (3) whether there is adequate access to all of the proposed lots.” December 2003 Decision at 3. Pursuant to this court’s remand, the Board conducted a rehearing on Januaiy 27, 2004 (“Rehearing”) and generated minutes from that Rehearing.[5]
The Board entered into the administrative record of the rehearing (“Rehearing Record”) the affidavit of plaintiff Christopher DelBrocco (“DelBrocco”), dated August 13, 2003. In his affidavit, DelBrocco describes Chapin Road as a mostly unpaved dead end with no turnaround. Chapin Road is approximately one-half mile in length and, in most places, ten to twelve feet wide. DelBrocco also states that Chapin Road is too narrow for two cars to pass each other; that according to the fire chief for the Town of Holden (“Town”), Chapin Road is unsafe because it provides insufficient access to the Property; and that the Town’s Health Agent and the Town’s Director of Growth Management and Building Commissioner agree that there can be no municipal trash services on Chapin Road because its narrowness prevents garbage trucks from being able to turn around.
DelBrocco attached to his affidavit the minutes from the Board’s May 28, 2002, meeting in which it rejected a preliminary subdivision plan for Chapin Road that LAM’s predecessors in interest proposed. The minutes from that meeting indicate that among the reasons for denying the proposal was the owner’s plan to extend Chapin Road by one mile. A dead end of approximately one mile in length violated the Subdivision Control Regulations and would result in a threat to public safety.
Jennifer Weir submitted a letter to the Board regarding Chapin Road, and that letter, dated Januaiy 23, 2004, is included in the Rehearing Record, although not mentioned in the minutes of the meeting or the Board’s Findings of Fact. Weir is a registered civil engineer who visited Chapin Road to examine the current conditions which she compared “to the recommendations of the American Association of State Highway and Transportation Officials.” After her study of Chapin Road, Weir recommended that the Board not endorse LAM’s plan as ANR. Among the safely issues she discussed were the narrowness of the street and lack of shoulders that prevent two cars from passing each other and from pulling over; the lack of sidewalks or safe facilities on which pedestrians could walk; various “sight distance” problems; the lack of adequate public turnaround area for school buses, construction vehicles, garbage trucks, etc.; and the fact that part of the road is unpaved and the part that is paved is inadequate. Weir concluded that, in its current state, Chapin Road was unsafe for further development.
Chapin Road residents, and plaintiffs, Marie-Elissa Boisvert and Leonard Anderson also submitted letters to the Board which are contained in the Rehearing Record, as is a letter from Brian Kaplan, the attorney for plaintiffs Delbrocco, Boisvert, and Anderson and his wife Linda. In her letter, dated Januaiy 26, 2004, Boisvert described various safety and access issues with Chapin Road, including its narrowness, its lack of a turnaround, both of which contribute to traffic issues and the inability of fire and garbage trucks to get down the road. Anderson’s letter, dated January 27, 2004, listed the existing conditions on Chapin Road that Anderson, a civil engineer, “believefd] would have a devastating impact on the safety and access of the current and future residents, visitors, and travel *91 ers of Chapin Road if such a proposed development is allowed without roadway improvements which comply with current roadway safety design standards.” Among those conditions listed in Anderson’s letter are the inadequate sight distances, the inadequate width, the lack of shoulders and sidewalks, the lack of paving, the excessive road grade changes, the lack of turn around, the lack of public water supply, and the inadequate drainage system.
Kaplan’s January 26, 2004, letter on behalf of the plaintiffs lays out the legal standards and applies them to the factual arguments with respect to certain safety and access concerns. Specifically, Kaplan argues that Chapin Road is not a public way and that there is inadequate access to every proposed lot on the Property. Kaplan asked that the Board deny LAM’s ANR applications or that, “[a]t the very least, LAM should be required to widen and pave Chapin Road to ensure safe and adequate access." (Emphasis in original.)
The Rehearing Record also contains evidence favorable to LAM’s application for ANR endorsement. Specifically, the Rehearing Record contains the minutes from the Town’s annual town meeting held on March 17, 1913. At that meeting, the Town voted to “accept the committee’s report and adopt the names of streets and squares as therein suggested; provided, however, that the naming of any private street or way shall not imply any obligation on the part of the town for its maintenance and care, or any liability for the safety of travellers thereon.” Among those streets that were named at the 1913 Town meeting was Chapin Road.
Also included in the Rehearing Record is a copy of letter from Lawrence H. Galkowski (“Galkowski”), the Director of the Town’s Department of Public Works (“DPW’), dated October 21, 2003, and addressed to LAM. Galkowski wrote,
This letter shall serve as notification that the Town of Holden currently plows and maintains Chapin Road from it’s [sic] intersection with Bailey Road up to the point where the roadway is bisected by a stone wall. Said stone wall is located approximately 2,350 feet from Bailey Road. As such, this roadway is considered to be a public way.
A letter from the Town Clerk, Kathleen M. Peterson is also part of the Rehearing Record. In this letter, dated January 14, 2004, Peterson writes,
I hereby certify that the Department of Public Works currently plows and maintains Chapin Road from its intersection with Bailey Road up to the point where the roadway is bisected by a stone wall. Said stone wall is located approximately 2,350 feet from Bailey Road. As such, this roadway is considered to be a public way.
Additionally, the Rehearing Record contains an undated handwritten letter from George Howatt of 125 Chapin Road in which he requested that upper Chapin Road not be paved. He asked instead that the Town “fix the high spot at the lower hill as discussed and maybe a load of gravel or stone on the upper slope.” There is also a DPW “Request for Service” form from a Chapin Road resident stating that “(t)here is a ridge in the road that [the resident] would like either loped off or filled in on both sides as it is ruining his wife’s car.” Finally, handwritten notes, presumably from a DPW employee’s datebook, show that Chapin Road required 22.75 tons of stone on March 19, 2003,[6] and 56.45 tons of stone on March 20, 2003.
The Rehearing Record also contains two plans of land prepared by David E. Ross Associates, Inc., for LAM. The plan with Lots 11 and 12 and the plan with Lots 13 and 14 both show the lots have the same frontage and acreage as in the previous plans submitted with the Original Record.
The Board unanimously voted that LAM’s plans did not constitute a subdivision and that the plans were entitled to ANR endorsement. The Board filed Findings of Fact with the Town Clerk on February 9, 2004. In the findings, the Board again noted that for this endorsement, either Chapin Road has to be a public way or the Town has to certify that Chapin Road is maintained and used as a public way.
Chapin Road has been maintained by the Town of Holden Department of Public Works from the intersection of Bailey Road to the stonewall just beyond 125 Chapin Road for a length of approximately 2,350 feet. This maintenance has included the installation of stone, patching of pavement, plowing and sandingU
The Department of Public Works Director has submitted a letter dated October 21, 2003 . . . stating that the DPW has maintained Chapin Road for the first 2,350 feet and considers it a public way. The Town Clerk certified that the Town of Holden maintains Chapin Road and considers this road a public way in a document dated January 14, 2004[.)
The Board also stated that, alternatively, it could endorse LAM’s plan as ANR if Chapin Road is
a way in existence when the subdivision control law became effective in the city or town in which the land lies, having in the opinion of the planning board sufficient width suitable grades and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon or served thereby and for the installation of municipal services to serve such land and the building erected or to be erected thereon. Such frontage shall be of at least such distance as is then required by zoning or other ordinance or by law, if any, of said city or town for the erection of building on such lot.
With respect to this alternative method, the Board found the following facts:
The Town Clerk has record of adoption of the name of Chapin Road in the 1913 Town meeting. 125 *92 Chapin Road was constructed in, or prior to, 1860, it is evidence that Chapin Road was in existence prior to August 1, 1953, the date of acceptance of the first Subdivision Control Regulations for the Town[.]
Lots 11, 12, 13 and 14 are lots created on Chapin Road which meet the frontage and area requirements of the Zoning By law, with each lot having a minimum length of frontage of one-hundred feet and a minimum lot area of forty thousand square feet.
The Planning Board has previously endorsed a plan under Chapter 41, Section 8IP on October 22, 2002, submitted by Chapin Road Trust creating Lot 1[.] The Board unanimously voted that the plan did not require approval under the subdivision control law. Said plan created a lot beyond the plan currently under appeal.
Access to the lots and the condition of Chapin Road Eire adequate to support the creation of the new lots and the vehicular traffic. All lots have sufficient grades, minimal wetland issues and adequate access to utilize the frontage of Chapin Road. Chapin Road has adequate width and access to lots 11, 12, 13 and 14 to support the additional traffic.
DISCUSSION
I. G.L.c. 249, §4
The plaintiffs brought this complaint in the nature of a writ of certiorari under G.L.c. 249, §4. See Stefanick v. Planning Bd. of Uxbridge, 39 Mass.App.Ct. 418, 424 (1995) (“In the absence of a statutorily prescribed right of judicial review of a §8 IP plan, the review... is in the nature of certiorari”). The purpose of an action in the nature of certiorari is “to correct substantial errors of law apparent on the record adversely affecting material rights.” Commissioners of Civil Serv. v. Municipal Court of Boston, 369 Mass. 84, 90 (1975) (quotation omitted). The standard of review to be applied under G.L.c. 249, §4, depends on the nature of the administrative action that is being examined. Fire Chief of E. Bridgewater v. County Ret. Bd., 47 Mass.App.Ct. 66, 69 (1999); T.D.J. Dev. Corp. v. Consewation Comm’n of N. Andover, 36 Mass.App.Ct. 124, 128 (1994); Yerardi’s Moody St Rest & Lounge v. Board of Selectmen of Randolph, 19 Mass.App.Ct. 296, 300 (1985).
Where the statute to be applied by the administrative authority does not contain narrow and objective criteria, “the appropriate standard of review is error of law or abuse of discretion, measured by the ‘arbitrary and capricious’ test.” Caswell v. Licensing Comm’n for Brockton, 387 Mass. 864, 878 (1983). “But where . . . the authority of the administrative [body]... is limited by ‘narrow and objective criteria,’ judicial review becomes ‘an assessment of the strength of the evidence supporting the [administrative] action!.]’ ” Mayor of Revere v. Civil Service Comm’n, 31 Mass.App.Ct. 315, 322 (1991) (emphasis added) (footnote and internal citation omitted), quoting Yerardi’s Moody St. Rest. & Lounge, 19 Mass.App.Ct. at 300.
Here, the administrative action that the plaintiffs challenge is the Board’s endorsement of LAM’s lots as ANR based on its finding that the development of those lots is not a subdivision and thereby does not require review or approval under the Subdivision Control Law, G.L.c. 41, §§81K-81GG. The Board endorsed the lots as ANR pursuant to G.L.c. 41, §§81L and 81P. Under G.L.c. 41, §81P, the Board “shall forthwith, without a public hearing, endorse [on the plan] . . . the words ‘approval under the subdivision control law not required’ or words of similar import. .. Such endorsement shall not be withheld unless such plan shows a subdivision.” (Emphasis added.) A subdivision is the “division of a tract of land into two or more lots[.]” G.L.c. 41, §81L. Such division is not a subdivision, however,
if, at the time when [the division] is made, every lot within the tract so divided has frontage on (a) a public way or a way which the clerk of the city or town certifies is maintained and used as a public way, or (b) a way shown on a plan theretofore approved and endorsed in accordance with the subdivision control law, or (c) a way in existence when the subdivision control law became effective in the city or town in which the land lies, having, in the opinion of the planning board, sufficient width, suitable grades and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon or served thereby, and for the installation of municipal services to serve such land and the buildings erected or to be erected thereon.

Id.

Accordingly, “[t]he only proper basis under the statute for withholding an endorsement is that the plan shows a subdivision as defined in G.L.c. 41,§81L . . . The test is, therefore, an objective one[.]” Long v. Board of Appeals of Falmouth, 32 Mass.App.Ct. 232, 235-36 (1992). Thus, the Board’s authority is limited by narrow and objective criteria, making the standard of review “an assessment of the strength of the evidence supporting the [administrative] action[.]” Mayor of Revere, 31 Mass.App.Ct. at 322, quoting Yerardi’s Moody St. Rest. & Lounge, 19 Mass.App.Ct. at 300.
This test, also called the substantial evidence test, “is commonly understood to require that [administrative] findings must rest upon ‘such evidence as a reasonable mind might accept as adequate to support a conclusion.’ . . . Review under the standard entails scrutiny of the whole record to determine whether substantial evidence exists.” Boston Edison Co. v. Boston Redevelopment Auth., 374 Mass. 37, 54 (1977) (citation omitted), quoting Bunte v. Mayor of Boston, 361 Mass. 71, 74 (1972); see Saxon Coffee Shop, Inc. v. Boston Licensing Board, 380 Mass. 919, 930 (1980) (applying “substantial evidence” definition from G.L.c. *93 30A, §1(6), to G.L.c. 249, §4, review, specifically, “such evidence as a reasonable mind might accept as adequate to support a conclusion”).
Under the substantial evidence test, the reviewing court is not empowered to make a de novo determination of the facts, to make different judgments as to the credibility of witnesses, or to draw different inferences from the facts; it cannot disturb a choice made below between two fairly conflicting inferences or views of the facts, even if it might justifiably make a different choice were the case before it de novo.
Durbin v. Board of Selectmen of Kingston, 62 Mass.App.Ct. 1, 6 (2004).
II. Mass.R.Civ.P. 12(c)
In accordance with Standing Order 1-96, LAM brought a motion for judgment on the pleadings, and the plaintiffs brought a cross motion for judgment on the pleadings. Any party may move for judgment on the pleadings after the pleadings are closed.Mass.R.Civ.P. 12(c). A Rule 12(c) motion is actually a motion to dismiss that “argues that the complaint fails to state a claim upon which relief can be granted.” Jarosz v. Palmer, 436 Mass. 526, 529 (2002) (quotations omitted). “In deciding a rule 12(c) motion, all facts pleaded by the nonmoving parly must be accepted as true.” Id. at 529-30, citing Minaya v. Massachusetts Credit Union Share Ins. Corp., 392 Mass. 904, 905 (1984).
III. Approval Not Required
As discussed above, the Board can endorse a plan asANRifitis not a subdivision. G.L.c. 41, §81P. Apian dividing land into two or more lots is not a subdivision
if, at the time [when] the division is made, every lot within the tract so divided has frontage on (a) a public way or a way which the clerk of the city or town certifies is maintained and used as a public way, or (b) a way shown on a plan theretofore approved and endorsed in accordance with the subdivision control law, or (c) a way in existence when the subdivision control law became effective in the city or town in which the land lies, having in the opinion or the planning board, sufficient width, suitable grades and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon or served thereby, and for the installation of municipal services to serve such land and the buildings erected or to be erected thereon. Such frontage shall be of at least such distance as is then required by zoning or other ordinance or bylaw, if any, of said city or town for erection of a building on such lot[.)
G.L.c. 41, §81L.[7] “(T]he exclusion of the lots from the subdivision control law also requires that there be an actual street with ‘adequate access for fire trucks and emergency vehicles.’ ” Jaxtimer v. Planning Bd. of Nantucket, 38 Mass.App.Ct. 23, 24 (1995), quoting Shea v. Board of Appeals of Lexington, 35 Mass.App.Ct. 519, 523 (1993); Sturdy v. Planning Bd of Hingham, 32 Mass.App.Ct. 72, 72-73 (1992).
A. Frontage
The Town’s Subdivision Control Regulations,[8] contained within the Rehearing Record, provide that a division of land is entitled to ANR endorsement where, in part, the frontage of the lots on the way “shall be of at least the distance as is then required by zoning or other ordinance or by law, if any, of said city or town for the erection of building on such lot.” See G.L.c. 41, §81L. The Rehearing Record does not contain and neither party provided the Town’s zoning ordinances or by-laws, but the Board’s Findings of Fact indicate that the frontage must be a minimum of one-hundred feet. The plaintiffs do not contest that this amount is the proper frontage requirement.
1. Original Plans
LAM sought an ANR endorsement of its plans creating Lots 11, 12, 13, and 14. The Board found that the lots had the proper frontage, and the substantial evidence supports this conclusion. These plans, included with the Original Record and with the Rehearing Record, show the frontage onto Chapin Road of each lot as, respectively, 109 feet, 200.03 feet, 104.19 feet, and 104.34 feet. Tire frontage of each lot therefore complies with the Town’s frontage requirement.
2. New Plan
At the Rehearing, LAM submitted a new application for ANR endorsement in which it sought to add Parcel “A” to Lot 12. The Rehearing Record includes a copy of LAM’s application, but not the plan. In a separate decision, this court allowed the plaintiffs to supplement the administrative record with the plan showing Parcel “A” and Lot 12 (“New Plan”). The Board allowed the ANR endorsement as to the New Plan. The plaintiffs argue that, by adding Parcel “A” to Lot 12, LAM has reduced Lot 11s frontage, making it less than the minimum of one hundred feet.
The New Plan shows that Lot 11 no longer exists. In fact, the total frontage and acreage of LAM’s “Remaining Land” is equal to Lot 11s frontage and acreage plus the “Remaining Land” as it existed on the Original Plan.[9] There is therefore no violation of the frontage requirement with respect to Lot 11 because the evidence, as contained in the administrative record, establishes that Lot 11 no longer exists.
Moreover, approval of the endorsement of the New Plan was proper because there was no division of land. LAM annexed Parcel “A” to Lot 12 to form one single lot. The New Plan also contains the notation that “Parcel ‘A’ is not a building lot, but is to be conveyed to and annexed with adjoining Lot 12 to form one undivided lot containing 1.32 acres.” Even if this court were to construe LAM’s plan as a division of land in that the Lot 12/Parcel “A” lot is divided from the “Remaining Land,” each lot has the required frontage, *94 and, as discussed below, Chapin Road satisfies the way requirements of G.L.c. 41, §81L, and the access requirements.
B. Chapin Road’s Status as a Way
The statutory objective of the Subdivision Control Law is “regulating the laying out and construction of ways in subdivisions providing access to the several lots therein!.]” Cricones v. Planning Bd. of Dracut, 39 Mass.App.Ct. 264, 268 (1995), quoting G.L.c. 41, §81M. Where the land already has frontage on a way as defined in G.L.c. 41, §81L, approval under the Subdivision Control Law is not required. See G.L.c. 41, §8 IP. The following evidence contained in the Rehearing Record contributes to a finding that Chapin Road is a way as defined in G.L.c. 41, §81: a 1913 Town Meeting record proving that the Town decided on the name for Chapin Road; a letter from the DPW Director establishing that the Town plows and maintains Chapin Road; a letter from the Town Clerk certifying that Chapin Road is a public way; DPW records indicating that the DPW made repairs to Chapin Road at a resident’s request; and a letter from a Chapin Road resident asking the DPW not to pave Chapin Road.
1. G.L.c. 4, §81L(a) a. Public Way
“There are a number of methods by which a way can become a public way . . . Prior to [1846], one method was by a permanent and unequivocal dedication by the owner to public use, coupled with an acceptance by the public.” Sturdy, 32 Mass.App.Ct. at 74. In Sturdy, town records from 1737 established that
the town ... by a vote . . . accepted the same as ways for the towns [sic] use forever to all intents and purposes PROVIDED and upon no other consideration that where any of the ways are laid on the proprietors [sic] land in said town they do; that is the proprietors appropriate the said lands used for a way to that use and not other as also to free the town from any change or fencing out the same[.]
Id. at 74-75 n.8. Records further established that “in 1738, the [original private owners of the road] unanimously agreed to the town’s [1737] acceptance of the way . . . and also voted that they need not be further compensated for the taking.” Id. 74 n.7 (footnote omitted). There are no such records in this case that satisfy the pre-1846 method.
A public way is also “any way laid out by a public authority.” Matulewicz v. Planning Bd. of Norfolk, 438 Mass. 37, 43 (2002), citing G.L.c. 160, §1, G.L.c. 161, §1. The 1913 records demonstrate only that the Town named Chapin Road, not that a public authority laid it out. Chapin Road is therefore not a “public way” under G.L.c. 41, §81L.[10]
b. Way Maintained and Used as a Public Way
As in Matulewicz, there is no evidence that Chápin Road has been laid out as a public way. 438 Mass, at 43. “A more complex question is presented by the ‘maintained and used as a public way’ portion of the §81L language.” Id. In Matulewicz, the town clerk submitted to the board her certification that the way on which the property at issue had frontage “is maintained and used as a Public Way[.]” Id. at 38. The clerk did not base her certification “on anything in the clerk’s records!; rather it] . . . merely reflected the results of her oral inquiry of another town employee.” Id. at 43. This certification is therefore a ministerial act that “does not require an investigation culminating in an exercise of discretion.” Id. For that reason, planning boards “should treat. . . [such certification] as prima facie evidence that the way in question is maintained and used as a public way. This permits a challenge to the clerk’s certificate . . . [T]he certificate can be overcome by evidence that the way in question is not used and maintained as a public way.” Id. at 44.
Similarly, the Town Clerk in this case certified that Chapin Road was maintained and used as a public way based on the fact that the DPW plows and maintains Chapin Road. The DPW Director also claimed that Chapin Road is a public way because the DPW plows and maintains it. While the Town Clerk’s certification, based on the DPW Director’s letter, is not conclusive, it serves as prima facie evidence that Chapin Road is maintained and used as a public way. Additionally, there is other evidence in the administrative record that supports her certification.
The mere fact that Chapin Road was named by the town, according to the minutes of the 1913 Town Meeting, as a private street does not impose upon the Town the duly to maintain or care for that street; nor was there any assumption or suggestion of responsibility in that meeting. The DPW records and the DPW Director’s letter establish, however, that the Town does maintain and care for Chapin Road, and the resident’s letter and DPW request demonstrate that the public expects the Town to maintain Chapin Road. This evidence supports the Board’s conclusion that Chapin Road is maintained and used as a public way. See Matulewicz, 438 Mass, at 46 (“There was evidence which, although it did not compel a finding that the road was maintained and used as a public way, did allow for such a finding”); Sturdy, 32 Mass, at 75 and at n.9 (holding that recommendations for road’s repair could serve as “additional confirmation of the public character of the way”). Accordingly, the evidence in the Rehearing Record supports the Board’s finding that Chapin Road is maintained and used as a public way.
2. G.L.c. 41, §81L(c)
An alternative method to finding that Chapin Road is not a subdivision is if the lots have frontage on “a way in existence when the subdivision control law became effective in the city or town in which the land lies[.]” G.L.c. 41, §81L(c). That way must have, “in the opinion of the planning board, sufficient width, suitable grades and adequate construction to provide for the needs of vehicular traffic... and for the installation *95 of municipal seruices[.]” Id. (emphases added). These requirements are consistent with the notion that plans are entitled to an ANR endorsement when no new way has to be constructed because the existing way is sufficient to serve the development’s needs. See Cricones, 39 Mass.App.Ct. at 268; Sturdy, 32 Mass, at 76, quoting Gifford v. Planning Bd. of Nantucket 376 Mass. 801, 807 (1978).
In its Findings of Facts, the Board found that Chapin Road was in existence prior to August 1, 1953, the date on which the Town accepted the Subdivision Control Law, given the 1913 Town Meeting record of the adoption of the name. That evidence supports this conclusion. The Board further held that Chapin Road could adequately support the new lots and the resulting vehicular traffic. “All lots have sufficient grades, minimal wetland issues and adequate access to utilize the frontage of Chapin Road. Chapin Road has adequate width and access to lots 11, 12, 13, and 14 to support the additional traffic.” Therefore, the Board explicitly found that Chapin Road could “provide for the needs of vehicular traffic in relation to the proposed use of the land abutting or served thereby!.]” G.L.c. 41, §81L. This court also finds that, in concluding that “[ajccess to the lots and the condition of Chapin Road are adequate to support the creation of new lots[, and] . . . [a]ll lots have sufficient grades, minimal wetland issues and adequate access to utilize the frontage of Chapin Road[,]” the Board impliedly found that Chapin Road could “provide ... for the installation of municipal services to serve such land and the buildings erected or to be erected thereon.” G.L.c. 41, §81L.
The substantial evidence supports this conclusion. As discussed more fully below with respect to access, all parties agree that Chapin Road is wide enough for vehicles to drive on, although two vehicles cannot pass each other in some places. Therefore, vehicles will be able to access the proposed lots via Chapin Road. With respect to the installation of municipal services, the Board’s conclusion that Chapin Road’s condition is adequate to support the new lots is not rebutted by any of the plaintiffs’ evidence. In his letter contained in the Rehearing Record, plaintiff Anderson wrote that Chapin Road does not have a public water supply system and it has an inadequate drainage system. The plaintiffs, however, have not established that these issues are irreparable such that Chapin Road cannot support the proposed lots.
Accordingly, Chapin Road is not a subdivision pursuant to G.L.c. 41, §81L(c).
C. Adequate Access
In acting on an application for an ANR endorsement, “[p]lanning boards and courts must take into account . . . the purpose of the §8IP exemption from subdivision control.” Gates v. Planning Bd. ofDighton, 48 Mass.App.Ct. 394, 396 (2000). The principal object of the subdivision control law is “to ensure efficient vehicular access to each lot in a subdivision!.]” Id. quoting Gifford, 376 Mass, at 807. “(I]f the plan or on-the-ground facts showed that vehicular access from the public way was not a practical possibility, then the planning board was to deny ANR endorsement.” Id.
There are essentially “(t]wo categories of access on public ways . . . There is the ‘could be better but manageable’ categoiy and the ‘illusory’ category. The first category warrants a §8IP endorsement; the second does not.” Bail v. Planning Bd. of Leverett, 58 Mass.App.Ct. 513, 517 (2003), quoting Gates, 48 Mass.App.Ct. at 399. This determination does not require the planning board, and eventually the court, to consider the adequacy of the way; rather, the board and court must consider the adequacy, not the quality, of the access the way affords to the proposed lots. Gates, 48 Mass.App.Ct. at 398. The access must be presently adequate, not just possibly adequate. Id. at 397, citing Poulos v. Planning Bd. of Braintree, 413 Mass. 359, 362 (1992) (holding that future removal of guardrail that prevented access to proposed lot did not entitle plan to ANR endorsement because of “the absence of present adequate access from the public way to each of the plaintiffs lots”).
In Gates, eight of the twelve proposed lots contained wetlands that could not be built upon, while the upland which could be built upon was a considerable distance from the public way. Id. at 399. “To reach the portions of the lots where a house could be built, . . . it would be necessary to build driveways on bridges over the wetlands.” Id. at 399-400. Although access from the public way was theoretically possible, it was illusory because of the “length and errant routes . . . that need to be traversed by an elevated structure!.]” Id. at 400. The court held that the plan was not entitled to an ANR endorsement because “the frontage along [the public way] does not afford practical, safe, and efficient access from [the public way.]” Id. at 401.
Conversely, in Sturdy, the court found that the plaintiffs’ proposed plan was entitled to ANR endorsement. 32 Mass.App.Ct. at 78. There, the photographs of the public way showed that it was “a passable woods road of a dirt substance with some packed gravel approximately 11-12 feetin width, muddy in spots and close to impassable at very wet portions of the year. Angles for ingress and egress at either end [of the public way were] such that it would be very difficult for large emergency vehicles to turn onto [the public way]. The road [was] wide enough for one car only.” Id. at 75 n.10. The trial judge originally concluded that the public way, “in its present condition, does not satisfy the requirement of safe access for emergency and other vehicles to the lots in question.” Id The trial judge reconsidered this decision based on two cases issued subsequent to his original judgment, Long Pond Estates, Ltd. v. Planning Bd. of Sturbridge, 406 Mass. 253 (1989), and Corcoran v. Planning Bd. of Sudbury, *96 406 Mass. 248 (1989). Id. at 73. Based on these cases, the judge held that the plaintiffs were entitled to an ANR endorsement because they had shown the existence of a public way and “the ‘practicality of access upon that public way . . . notwithstanding any deficiencies in the way.’ ” Id. (emphasis added).
Therefore, “a planning board may withhold the ANR endorsement (where the tract has the required frontage on a public way) only where the access is ‘illusory in fact.’ ” Id. at 75, quoting Lone Pond Estates, Ltd., 406 Mass, at 255, Corcoran, 406 Mass, at 251. “Deficiencies in a public way are insufficient ground for denying the endorsement.’’ Id. at 76. Moreover, “since municipal authorities have the obligation to maintain such ways, there is already a public control as to how perceived deficiencies, if any in such public ways are to be corrected.” Id.
In seeking to evaluate the access that Chapin Road affords in this case, the motion record supports the view that access here compares more favorably to that in Sturdy than in Gates. Here, one vehicle can travel down Chapin Road at a time; it is too narrow for two vehicles to pass each other, in places. See Sturdy, 32 Mass.App.Ct. at 75 n.10. As this deficiency did not render access to the lots inadequate in Sturdy, nor does it here, since the record demonstrates that access to the proposed lots is not illusory. See id. Additionally, vehicles can still drive down Chapin Road despite the fact that it is partially unpaved. In fact, one resident requested that the Town not pave Chapin Road. Even though part of the unpaved road in Sturdy grew so muddy at times it made the road close to impassable, access to the proposed lots was not illusory. Id. As in Sturdy, “there is public control as to how perceived deficiencies can be corrected.” Id. at 76. Accordingly, access to the lots falls in the “ ‘could be better but manageable’ category” rather than the “ ‘illusory’ category.” See Gates, 48 Mass.App.Ct. at 399.
V. Conclusion
The substantial evidence as contained in the administrative record establishes that the proposed lots satisfy the frontage requirements, and that Chapin Road is a way maintained and used as a public way that presently affords adequate access to the Properly. Accordingly, the board’s ANR endorsement of LAM’s plans was proper and is hereby affirmed.

ORDER

For the foregoing reasons, the plaintiffs’ motion for judgment on the pleadings is DENIED and LAM’s cross motion for judgment on the pleadings is ALLOWED.

“Claims filed in the Supenor Court. . . pursuant to the standards set forth in . . . G.L.c. 249, §4 . . . shall be heard in accordance with the . . . procedures” set forth in Supenor Court Standing Order 1-96. Massachusetts Superior Court Standing Order 1-96 (2004). Such claims “for judicial review shall be resolved through a motion for judgment on the pleadings, Mass.R.Civ.P. 12(c), in accordance with Supenor Court Rule 9A[.]” Id. at §4; see Northboro Inn, LLC v. Treatment Plant Bd. of Westborough, 58 Mass.App.Ct. 670, 673 n.5 (2003). The court’s “review shall be confined to the record.” Standing Order 1-96, at §5. “Such record ‘shall consist of (a) the entire proceedings, or (b) such portions thereof as the agency and the parties may stipulate, or (c) a statement of the case agreed to by the agency and the parties.” Id. at §2, quoting G.L.c. 30A, §14(4).

Both plans were certified as complying with the rules and regulations of the Registers of Deeds.

he Rehearing Record contains a document titled “Update” that discusses the Rehearing. This document is not the Rehearing’s minutes. In a separate motion to supplement the administrative record, the plaintiffs supplied the Rehearing minutes. In a separate decision, this court allowed the plaintiffs’ motion as to those minutes.

This date also contains the notation “Chopin Road - MUD!” that presumably refers to Chapin Road. If it does, it serves as further proof that Chapin Road residents directed their complaints with respect to Chapin Road to the Town.

It is undisputed that the exception set forth in G.L.c. 41, §81L(b), does not apply in this case.

The plaintiffs argue that Chapin Road violates certain of these regulations. For example, §VA.2.a requires roads to be at least twenty-eight feet wide, and Chapin Road is only ten to twelve feet wide in places. These regulations, however, apply only to subdivisions, with the exception of §II.B which mirrors G.L.c. 41, §8 IP, regarding ANR endorsements. As discussed further above, LAM’s plan does not constitute a subdivision. The plaintiffs’ argument that the Board’s decision violates these regulations is therefore without merit.

On the Original Plan, Lot 11 has 109 feet of frontage and consists of 1.81 acres. The “Remaining Land” has 950.70 feet of total frontage and consists of 12.42 acres. In the New Plan, Parcel “A” is approximately 0.19 of an acre, based on the fact that its addition to Lot 12, originally consisting of 1.13 acres, creates a lot containing 1.32 acres. That 0.19 of an acre is approximately 1.62 less than Lot 11s onginal acreage. Parcel “A” also has 35 feet of frontage, which is 74 feet less than Lot 11s onginal frontage. The “Remaining Land” now has a frontage of 1024.70 feet, which is its ortginal 950.70 feet plus Lot 11s 74 feet. Additionally, the "Remaining Land” now consists of 14.03 acres, which is approximately its ortginal 12.42 acres plus what remained of Lot 11 after Parcel “A” was subtracted from it.

In the Board’s January 27, 2004, “Update” contained within the Reheartng Record in lieu of the Reheartng minutes, the wrtter states, “Chapin Road has been considered a public way by the Town, however, because the roadway has been in existence for such a long pertod of time there are no histortcal Town Meeting records to depict acceptance of this roadway, this is not uncommon.” The Board’s Reheartng minutes, with which the plaintiffs supplemented the Rehearing Record, do not contain such a statement. Even if this court had denied the plaintiffs’ motion to supplement the administrative record with this minutes and not considered them, the “Update” statement is not supported by substantial evidence as set forth in the administrative record.