Connor, John P., J.
Joseph H. Johnson, Individually and as Trustee of the Peacha West Realty Trust (hereinafter referred to collectively as the plaintiff) filed an application with the Planning Board of the Town of Millbury for a special permit under the Open Space Community (OSC) provisions of the Zoning By-Law (By-Law). He received a response from the town planner claiming that his application was incomplete because it failed to include a request for site plan review under a separate section of the By-Law. The parties have reached a stalemate. The plaintiff has filed a complaint pursuant to G.L.c. 231A seeking declaratory relief. Both parties have moved for summary judgment and agree that there are no genuine issues of material fact and dispute.
The plaintiff has taken several steps toward developing a residential subdivision in Milibury. He began by filing a traditional preliminary subdivision plan with the Planning Board which issued a certificate of preliminary approval. G.L.c. 41, §81. His next step was to bypass the traditional subdivision plan in which all lots complied with the dimension requirements of the By-Law and pursue OSC in which reduced lot size is offset by parcels of community owned, undeveloped land. The mechanism for obtaining this approval begins with obtaining a special permit from the Planning Board under Section 44 of the By-Law.
Following this procedure, the plaintiff filed an OSC application with the Planning Board in December 2004 accompanied by engineering plans, filing fee and other supporting documents. On both January 3, and January 26, 2005 Laurie A. Connors (Connors) the Town Planner acting on behalf of the Planning Board sent a written rejection of the application to the plaintiff. In that letter Connors informed the plaintiff that the application required a request for site plan review under Section 12.4 of the By-Law. Like the special permit described in Section 44, site plan review requires a public hearing and a submission of plans and other supporting documents. The plaintiff contends that the By-Law exempts all residential subdivision plans, even an OSC, from the site plan review process. The Planning Board disagrees and refuses to accept the plaintiffs application unless it also includes a request for site plan review.
By-Laws, such as Millbuiy’s, over the last twenty years have expressed their concern over the rapidly disappearing fields and woods in rural areas by adopting Zoning By-Law provisions that encourage the preservation of undeveloped land. Section 44 of the Millbuiy By-Law adopted in 1980 provides that the Planning Board may grant a special permit for an OSC and tracts of land over ten acres in a “Suburban” district. It sets out a very precise and detailed process for the developer in Section 44.3. Of particular significance is Section 44.22 which requires the Board to determine that the “plan is superior to a conventional one in preserving open spaces for conservation or recreation; in utilizing natural features of the land; in allowing for more efficient provision of streets, utilities and other public services; in at least equal to a conventional plan in other respects.” Section 44 also provides detailed formulas for determining the possible trade offs.
Special permits are authorized by G.L.c. 40A, §9. In deciding whether to issue such a permit the Board is exercising discretionary authority which means that it is bound to act fairly and reasonably and its decision can only be overturned by a court if it is shown to be unreasonable, whimsical, capricious or arbitrary. MacGibbon v. Board of Appeals of Duxbury, 356 Mass. 635, 638-39 (1970).
The special permit is only one step in the process. A “subdivision” is defined by G.L.c. 41, §81K as a division of land into two or more lots which do not front on a public way or a way in existence. The “Subdivision Control Law” found in G.L.c. 41, §8 IK through 81GG establishes an approval process involving public hearings before a Planning Board and in conducting those hearings, the Board is bound by its own regulations and the provisions of the By-Law. G.L.c. 41, §81M. The purpose of this law is to protect “the safety, convenience and welfare” of the municipalities throughout the Commonwealth and pursuant to that purpose, planning boards have brought powers to enact regu *534 lations to regulate all phases of a potential subdivision. G.L.c. 41, §81M and 81Q. Either simultaneously with or independent of the special permitting process the plaintiff must submit his plans for approval under the Subdivision Control Law. G.L.c. 41, §81T.
Additionally, the Planning Board is demanding that the plaintiff submit to the site plan approval process as outlined in Section 12.4 of the By-Law. This requires a third public hearing and in many respects the review overlaps what is included in the other applications and in some respects is not at all relevant to residential development. What is particularly alarming about this division is that Section 12.45(a) states that: “the planning board may approve an application” which leads to the inference that this approval is akin to a special permit and is subject to the discretionary authority of the planning board. See Quincy v. Planning Board of Tewksbury, 39 Mass.App.Ct. 17 (1995).
The sole issue before the court with respect to the site plan review provision of the by-law is whether as a matter of law the wording of subsection 12.41 requires the plaintiff to submit to the process. The subsection is set out in its entirety.
12.41 Applicability. The site plan review provisions shall apply to the following types of structures and uses (excluding subdivisions for detached single-family dwellings).
(a) Any improvement, alteration, or change in use which either results in an increase of at least 6,000 square feet of gross floor area or results in a total of ten (10) or more parking spaces either new or existing.
(b) Any improvement, alteration, or change in use which either results in an increase of at lest [sic] 6,000 square feet of gross floor area or results in a total of ten (1 ) [sic] or more parking spaces.
(c) Any new structure, group of structures, improvement, alteration or change in use, as defined above, which either results in an increase of 3,000 square feet of gross floor area or requires the addition of seven (7) or more parking spaces, when any portion of the lot or parcel of land on which said structure or use is located lies within two hundred (200) feet of a residential district.
(d) All special permit uses described in Section 14.11.
(By-Laws of 5-7-91, Art. 30; By-Laws of 5-5-92, Art. 31; Bylaws of 5/02).
The defendant argues that the Court should not even address this issue since the plaintiff has not exhausted all his remedies before the Planning Board. The defendant points to Subsection 12.44(g) which allows the Planning Board to waive the filing of any or all of the impact statements relating to traffic, environment, finances and historical issues. The flaw of this argument was that the Planning Board cannot waive the site plan review process itself and thus exposes the developer to one more discretionary approval. The plaintiff has a more fundamental problem. The Planning Board will not even grant him a public hearing on his OSC. In this situation the principal of exhaustion of remedies does not apply and the plaintiff is entitled to seek declaratory relief. See Bearce v. Zoning Board of Appeals of Brockton, 351 Mass. 316, 319-20 (1966). Turning to the appropriate interpretation the interaction of Section 14and41 of the By-Law, the Court is guided by the principle that whenever possible every word in the statute or By-Law should be given meaning. Matulewich v. Planning Board of Norfolk, 438 Mass. 37, 44 (2002) and no word should be regarded as superfluous. Commonwealth v. Woods Hole, Martha’s Vineyard & Nantucket SS Auth., 352 Mass. 617, 618 (1967). Rather than isolate the first sentence of Section 12.41 which apparently excludes residential subdivisions from site plan review, it is necessary to review the chronological adoption of Section 12.4 and 44. First came the OSC and Section 44 which was adopted in 1980, then in 1990 the special permit section, 12.4 was adopted without Subsection (d). At that point in time the two provisions read together provided that OSC required a special permit, but that as a residential subdivision it did not need to submit to site plan review.
In 2002, Section 12.41 was amended by adding Subsection (d) which made special permit uses including an OSC (Section 14.11(f)) subject to site plan review. This history leads to the inescapable conclusion that the addition of Subsection (d) withdrew the OSC from the exemption given from the site plan review to other forms of residential subdivisions.
Any uncertainty in interpreting the applicability of the site plan review process to the OSC is dispelled by understanding the legislative intent underlying the three approval processes required for developing an OSC.
The purpose of the Subdivision Control Law is the “protection, convenience and welfare” of the community especially with regards to the layout of the road, the ways, the utilities, and walkways. G.L.c. 41, §81M. The OSC special permit has been adopted for the purpose of preserving open spaces for conservation and recreation (Section 44.21) and the purpose of site plan review is to provide the process and reviewing eveiy potential, substantial impact of certain special permit uses on the health, safety and welfare of the community.
While there may be some overlapping in these three approval processes which can impose unreasonably onerous burdens on an applicant the legislative intent underlying them reveals separate and legitimate areas of concern that are not inconsistent with one another. The Court is required to support that intent in interpreting the By-Laws. See Int’l Org. of Masters, Mates and Pilots v. Woods Hole, Martha’s Vineyard & Nantucket SS Auth., 392 Mass. 811, 813 (1984).
*535 In this case the wording of Sections 12.4 and 44 is clear and unambiguous. The wording is further supported by the adoptor’s intent. There is no need for further analysis .An applicant for OSC must submit to site plan review under Section 12.4.